CALVERT FIRE INSURANCE COMPANY *v.*
GARY WILLIAM REICK ET UX.

[No. 1227, September Term, 1977.]

*Decided June 13, 1978.*

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

*Albert D. Brault,* with whom were *James S. Wilson* and *Brault, Graham, Scott & Brault* on the brief, for appellant.

*Walter W. Pitsenberger,* with whom were *Sinclair,*

*Chapdelaine & Pitsenberger, Chartered* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

Calvert Fire Insurance Company (appellant) issued a motorcycle insurance policy to Gary and Judy Reick (appellees). One of the risks covered under the policy was injury to appellees by an uninsured motorist, as to which the policy stated:

> "The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration." [1]

On May 15, 1976, at which time the Calvert policy was in effect, Mr. Reick was struck by an uninsured vehicle driven by an uninsured motorist, one Michael Devita. Timely notice of this accident was given to Calvert. Thereafter, appellees sued Devita in the Circuit Court for Prince George's County, and recovered judgments totalling $21,500.[2] Notice of this litigation and its conclusion also was given to Calvert — prior to trial, subsequent to trial but before judgment was final, and after judgment had become final — and demand was

---

1. Laws of Md., 1975, ch. 562 (Md. Annot. Code art. 48A, § 541 (c)) prohibited the inclusion of clauses requiring the compulsory arbitration of disputes concerning uninsured motorist coverage in policies issued after July 1, 1975. The parties concede that, as a result, the last part of the above-quoted language, purporting to require such arbitration, is void.

2. Gary Reick, individually, recovered a judgment of $20,000. He and his wife jointly recovered a separate judgment of $1,500.

made upon Calvert for payment under the "uninsured motorist" clause in the policy.

Calvert ignored this demand, and, as a result, on May 23, 1977, appellees filed suit against it in the Circuit Court for Prince George's County, for $21,500 plus counsel fees. A copy of the Declaration, prayer for jury trial, and summons was served upon Calvert by leaving it with the Insurance Commissioner on May 27, 1977.[3] No answer or responsive pleading was filed by Calvert within the time allotted by the Maryland Rules; and, on July 22, 1977, appellees, pursuant to Maryland Rule 310, moved for a default judgment. The second page of the written motion contains an Order granting the default judgment, signed by the court on July 22, and a Certificate of Service showing that "a copy of the foregoing Motion for a Default Judgment was mailed, postage prepaid this 22nd day of July, 1977, to Calvert Fire Insurance Company" through the Insurance Commissioner. The record does not indicate whether the copy mailed to Calvert showed that the default judgment had been entered — *i.e.,* whether it was mailed after the Order was signed and included a conformed copy of it, or whether it was mailed prior to the signing of the Order and included a copy of the Order as presented to the court.

For some reason, the Clerk of the Court, though entering the default judgment on his docket as of July 22, 1977, neglected to comply with Maryland Rule 611, which provides:

> "Upon the entry of judgment by default or decree pro confesso, pursuant to Rule 310 b or Rule 610 c 3, for failure to plead in response to original process, the clerk shall mail forthwith, notice thereof to the defendant at his address, if any, specified in the pleadings and shall note such fact on the docket or case file. If no address is specified and the address is otherwise unknown, this Rule shall not apply. The notice sent by the clerk shall follow the form set forth in the Appendix of Forms."

---

3. Service of process in this manner is authorized by Md. Annot. Code art. 48A, § 57. *See also* Maryland Rule 106 f (1). Calvert concedes that it was properly served.

Form 611 of the Appendix of Forms, appended to the Maryland Rules, states:

"In accordance with Maryland Rules of Procedure, you are notified that a judgment by default/summary judgment/decree pro confesso/summary decree was entered against you in the above entitled case on. . . .

"If you wish to take exception to this Judgment/Decree/by default, you have thirty days from the date of the Judgment/Decree within which to do so."

Calvert's disregard for these proceedings continued, as no response to the Motion for Default Judgment was forthcoming. On August 22, 1977 — 31 days after the entry of default judgment — the Reicks moved for, and the court granted, summary judgment in their favor for $20,000 plus counsel fees of $500. Upon entering this judgment on the docket, the Clerk mailed to Calvert, via the Insurance Commissioner, a notice in the form specified by Form 611, Appendix of Forms. This notice, although titled "Notice of Judgment by Default", advised Calvert that "summary judgment" had been entered against it.

On September 16, 1977 — within 30 days after the entry of the summary judgment and receipt of the notice thereof from the Clerk — Calvert moved to set aside the judgment. Alleging that it had a meritorious defense grounded upon the assertion of Mr. Reick's negligence as a causative factor in the accident and the agreement of the parties to arbitrate the dispute, Calvert drew attention to the Clerk's omission to send a notice of the entry of default judgment. Although not made clear in the pleadings filed by Calvert, it was argued at the hearing on Calvert's motion to set aside the judgment that the Clerk's failure to comply with Maryland Rule 611 constituted an "irregularity" within the meaning of Maryland Rule 625, thus giving the court broad discretion to set aside the judgment and permit a trial on the merits.[4]

4. Maryland Rule 625 a provides: "For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such

The court, indeed, viewed that as the essential question,[5] and, after listening to argument of counsel, concluded that it "does not feel in this particular case that this is such an irregularity that would warrant setting aside the entry of the default and later a motion for summary judgement (sic)." The court noted that the Rule (611) was mandatory "as far as the clerk is concerned", and was "a desirable procedure to follow as far as the clerk's office is concerned", but that the notice required thereunder "is not a legal requirement of due process wise as I view it as far as the defendant is concerned." As to the defendant, the court concluded that "he is not really to be heard if he doesn't in fact get a copy of notice by default — that he has not had due process in the case because he has been served the original declaration." In light of this conclusion, the court decided that it did not have to reach the question of whether Calvert had a meritorious defense.

On appeal, Calvert asserts that, because the requirements of Rule 611 are mandatory, the failure of the Clerk to comply with them perforce constitutes an "irregularity" within the meaning of Rule 625, and that, although the mere existence of an irregularity does not require that the judgment be set aside, it does require that the court at least consider certain established factors in determining whether or not to exercise its discretion to set aside the judgment. Here, Calvert argues, the court appeared to conclude that the Clerk's failure to comply with Rule 611 did not constitute an irregularity in the first instance, and thus it never reached the requisite issue of whether and how to exercise its discretion.

The question raised by Calvert involves the interplay between Rules 625 and 611. As an introductory comment, we note that, although Calvert's motion to set aside the judgment was filed within 30 days after the entry of summary

period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake *or irregularity*." (Emphasis supplied.)

 5. The court stated that it viewed the problem as "whether or not the failure of the Clerk to file a copy of the notice of judgment by default until August 22, 1977, when they purported to file a copy of the notice of the summary judgement (sic) entered on August 22, is an irregularity or a stigma such as the quality and type to warrant setting aside the judgement (sic) in this case."

judgment, it was filed more than 30 days after the entry of the default judgment. With respect to the scope of a court's revisory power under Rule 625, a judgment by default is a final one, and the 30-day period under that rule begins to run upon its entry. *Maggin v. Stevens,* 266 Md. 14 (1972), and cases cited therein. It is for that reason that Calvert must establish fraud, mistake, or irregularity in order to prevail in its motion.

In effect, the existence of at least one of these three elements — in this case, irregularity, being the only one alleged — is a triggering mechanism. After the expiration of 30 days, the court has no occasion to exercise discretion to set aside a judgment, because it has no discretion left to exercise, unless one of these prerequisite elements is first shown. *See Tasea Investment Corp. v. Dale,* 222 Md. 474 (1960); *Williams v. Snyder,* 221 Md. 262 (1959); *Eliason v. Comm'r of Personnel,* 230 Md. 56 (1962). Thus, although the Court of Appeals has spoken of these three elements as being among several that must be established in order to justify setting aside a judgment, in light of the fact that the existence of at least one of the three is mandatory to the point of being jurisdictional,[6] both logic and considerations of judicial efficiency dictate that the presence of one or more of them be ascertained before a court even considers the other factors bearing on whether and how it will exercise its discretion.

The first question, then, is whether the Clerk's failure to comply timely with Rule 611 — *i.e.,* to send "forthwith" a notice of the entry of default judgment — constitutes an "irregularity" within the meaning of Rule 625, sufficient to require consideration of those elements or criteria bearing on the exercise of the court's discretion. These secondary elements are that the movant is acting in good faith and with ordinary diligence, and that it has a meritorious defense.

An "irregularity", in the context of Rule 625, has been defined as "the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done." *Berwyn Fuel & Feed*

---

6. In Maggin v. Stevens, *supra,* 266 Md. at 19, the Court stated that, in the absence of fraud, mistake, or irregularity, the Court was "without power to set aside the judgment. . . ."

*Co. v. Kolb,* 249 Md. 475 (1968); *Mut. Benefit Soc'y v. Haywood,* 257 Md. 538 (1970).

Prior to the adoption of Rule 611 by the Court of Appeals in 1974, the law was clear that there was no obligation on the part of anyone to notify a defendant that a default judgment had been entered;[7] and, as a result, the 30-day period for discretionary revision often expired before the defendant became aware that judgment had been taken against him. This produced not only a sizeable quantity of default judgments that became both final and "unreviewable", but, from time to time, produced an arguably unfair and inequitable result. *Capobianco v. Gordon,* 19 Md. App. 662 (1974), may have been such a case, and, in a footnote appearing on page 664, we called the problem to the attention of the General Assembly and the Court of Appeals Standing Committee on Rules of Practice and Procedure (hereafter referred to simply as the Rules Committee).

The General Assembly was the first to respond, through the introduction in its 1974 session of House Bills 458 and 694, to require as a matter of substantive law, the giving of notice to the defendant that a default judgment has been entered against him. The Rules Committee, apprised of this pending legislation, decided to deal with the matter by way of Rule, and, on March 8, 1974, approved for recommendation to the Court of Appeals a new Rule 611.[8] As then approved, the new Rule placed the onus of notifying the defendant upon the plaintiff. It provided:

> "Immediately upon entering a default judgment for failure to appear, the plaintiff shall send written notice to the defendant at his address specified in the pleadings, informing him of the entry of the judgment."

At its next meeting, on April 5, 1974, and before any action

---

7. *See, for example,* Berwyn Fuel & Feed Co. v. Kolb, *supra,* 249 Md. 475, 479: "We also point out that the entry of the default judgment, pursuant to Rule 310 b, by the plaintiff without giving notice to the defendant did not constitute an 'irregularity' within the meaning of Rule 625. . . . Nor was the attorney for the plaintiff obliged to advise the attorney for the defendant of his intention to enter judgment by default."

8. *See* Minutes of Rules Committee Meeting of March 8, 1974, Item 1.

had been taken by the Court of Appeals, the Rules Committee reconsidered what it had done in March, and amended the proposed rule to place the burden of sending the notice on the Clerk. After the April revision, the proposed Rule read as follows:

"Upon the entry of judgment by default, pursuant to Rule 310b, for failure to plead in response to original process, the clerk shall mail forthwith, notice thereof to the defendant at his address, if any, specified in the pleadings and shall note such fact on the docket or case file. If no address is specified and the address is otherwise unknown, this rule shall not apply." [9]

Finally, at its May, 1974, meeting, the Rules Committee completed its drafting of the Rule by inserting the words "or decree pro confesso" in the first clause, after the words "judgment by default". In that form, the proposed Rule, along with many other proposals for rules changes, was published for comment by the Bar.[10] Apparently, no comments were received (or, at least, none was acted upon favorably), and the Rule, as proposed, was forwarded to the Court of Appeals [11] with an "explanatory note" that read:

"The purpose of this rule is to *ensure* that a defendant gets notice of a Judgment by Default and to obviate situations such as those occurring in *Capobianco v. Gordon,* 19 Md. App. 662 (1973) wherein a defendant was under the misapprehension that she was being defended." (Emphasis supplied.)

The Court of Appeals adopted the Rule as finally recommended by the Rules Committee, effective July 1, 1974. Thereafter, two additional amendments were made, both reflected in the 48th Report of the Rules Committee to the

**9.** Comparable changes were proposed to Maryland District Rules 610 and 648. The minutes of the April meeting do not record any discussion of or reasons for the revisions to the proposed Rule. As a probable result of the action taken by the Rules Committee in April and May, the General Assembly (notably the Judiciary Committee of the House of Delegates) took no affirmative action on the pending legislation.

**10.** *See* Daily Record, May 20, 1974.

**11.** *See* Daily Record, June 12, 1974.

Court of Appeals.[12] One made the rule applicable to summary judgment proceedings, and the other added to the Appendix of Forms a form (Form 37) for the notice required under the Rule. The Report of the Rules Committee states, with respect to these items:

"The proposed amendment of Rule 611 (Judgment by Default — Notice) and the addition of Form 37 (Notice of Judgment by Default or Decree Pro Confesso) to the Appendix of Forms, provides for *mandatory use by clerks of the required notice,* substantially in the form shown in the Appendix of Forms ˙ as Form 37, and extends the Rule's applicability to Summary Judgment proceedings." (Emphasis supplied.)

These changes were adopted by the Court of Appeals on June 16, 1975, effective July 1, 1975.

In light of this background, it is clear that the Rule was intended to be, and, by its unambiguous terms is, mandatory. The clerk is under a firm, intended, and unmistakable duty to send the required notice in accordance with the Rule and in the form (or substantially in the form) prescribed in the Appendix of Forms. His failure to do so "forthwith" upon the entry of a default judgment therefore constitutes an irregularity for purposes of Rule 625 — the "not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought . . . to be done."

Because of this irregularity, it was incumbent upon the court to consider and determine whether Calvert was proceeding in good faith, with ordinary diligence, and whether it had a meritorious defense. Calvert, of course, has the burden of establishing all three of those elements; and, in weighing its argument, if the court were to conclude that any one of them is lacking, the motion to set aside the judgment must be denied.

It is not entirely clear from the remarks of the Circuit Court whether its denial of Calvert's motion was based upon the

12. *See* 2 Md. Register 725, 726 (May 14, 1975).

belief that Rule 611 was not mandatory and that its violation therefore did not constitute an "irregularity", or upon its belief that Calvert simply was not proceeding in good faith or with ordinary diligence. The oral opinion of the court could be read both ways. The court clearly declined to consider the question of whether Calvert had a meritorious defense.

In light of the uncertainty as to whether the court actually reached the first two of those three issues, coupled with the certainty that it did not consider the third, and because, having established an irregularity, Calvert is entitled under Rule 625 to have those issues addressed, we shall vacate the order denying the motion to set aside the judgment and remand the case to the Circuit Court for a determination as to whether, given the irregularity found by us to exist, the judgment should be stricken. We wish to make it clear that we express no opinion whatever on that question, it being, as noted, a matter within the discretion of the Circuit Court.

> *Order denying motion to set aside judgment vacated; case remanded to the Circuit Court for Prince George's County for further proceedings in conformance with this opinion; each party to pay own costs.*