539 A.2d 694

J.T. MASONRY COMPANY, INC.

v.

OXFORD CONSTRUCTION SERVICES, INC.

No. 1001, Sept. Term, 1987.

Court of Special Appeals of Maryland.

April 7, 1988.

Certiorari Granted June 24, 1988.

600

Kevin B. Kamenetz (Steven A. Thomas and Moore, Libowitz & Thomas, on the brief), Baltimore, for appellant.

Michael W. Skojec (Thomas N. Biddison, Jr. and Gallagher, Evelius & Jones, on the brief), Baltimore, for appellee.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal by J.T. Masonry Company, Inc., appellant, from the judgment of the Circuit Court for Baltimore City denying its Motion to Strike Judgment and Further Reinstate Case to Trial Docket. Although appellant submits three questions for our consideration, we believe they may be condensed into one, namely:

Did the trial judge abuse his discretion in refusing to exercise revisory power over an enrolled judgment, which dismissed appellant's action against appellee for lack of prosecution? [1]

Because we will hold that the trial judge did not abuse his discretion, we will affirm.

## THE FACTS

Pursuant to a contract, dated August 17, 1982, with appellee, Oxford Construction Services, Inc., appellant agreed to perform masonry work on a project being constructed by appellee in Baltimore City. After appellant had performed pursuant to the contract, a dispute arose concerning the payments due under the contract and the quality of the work being performed by appellant. As a result of this dispute, appellant filed a breach of contract action against appellee, and appellee filed a counter-claim, which also sounded in breach of contract, against appellant. Suit was filed on August 3, 1984.

From the filing of the action to June 10, 1985, appellant pursued its action against appellee by conducting discovery. Appellee, on the other hand, made no effort to pursue its counter-claim. From June 10, 1985 through October 28, 1986, there was no docket activity in the case. On the latter date, the clerk of the Circuit Court for Baltimore City sent the parties a notice, pursuant to Maryland Rule 2–507(d), of impending dismissal of the case for lack of prosecution. Neither party moved to defer dismissal as permitted by Rule 2–507(e). Consequently, an order dismissing the case

---

1. The three questions posed by appellant are:
    1. Did the Circuit Court clerk fail to send proper notice of contemplated dismissal to the attorney of record for the Appellant, constituting an irregularity sufficient to strike the enrolled judgment?
    2. Did the Circuit Court clerk fail to perform a duty required by statute or rule, so as to require the striking of the enrolled judgment?
    3. Was the trial court in error when it found that the Clerk committed no irregularity sufficient to strike the judgment, and that the Appellant failed to act with ordinary diligence?

was signed on December 1, 1986. The judgment therefore became enrolled thirty days later, *i.e.*, on or about January 1, 1987. *See* Maryland Rule 2–535(b); *Ventresca v. Weaver Brothers*, 266 Md. 398, 403, 292 A.2d 656 (1972); *Gay Investment Co. v. Angster*, 231 Md. 318, 321, 190 A.2d 95 (1963); *Kramer v. McCormick*, 59 Md.App. 193, 204, 474 A.2d 1346 (1984).

Appellant learned that its action had been dismissed when the new counsel it had retained attempted to enter his appearance in the case. This occurred on February 25, 1987. Approximately one and a half months later, on April 15, 1987, appellant filed the motion to strike the judgment. That motion, which was supported by the affidavit of Michael Rinn, counsel of record when the case was dismissed, alleged that Rinn had not received the notice of impending dismissal.[2]

At the hearing held on the motion, Rinn was called as a witness for appellant and testified in favor of the motion. He endeavored to establish that non-docket activity occurred in the case after June, 1985 and to explain the absence of docket entries. He testified that the time between the last docket entries and the fall or winter of 1985 was consumed by scheduling the production by appellee of the documents sought by appellant's Request for Production of Documents and by discussions between appellant and himself aimed at settling the case. Thereafter, in early to middle 1986, problems arose between Rinn and appellant and between Baker & Baker, a law firm with which Rinn was formerly associated, and appellant, over fees allegedly due and payable by appellant. Eventually both Rinn and Baker & Baker, in separate actions, sued appellant for recovery of the disputed fees. Rinn thus became a poten-

---

**2.** Appellant filed a supplemental affidavit, also signed by Rinn, in support of its motion. That affidavit contained considerably more detail than did the original affidavit and sought to explain the circumstances surrounding counsel's failure to receive the notice. The affidavits contained essentially the same information as that presented in testimony at the hearing on appellant's motion to strike.

tial adverse witness against appellant and, as a result, stopped all further work on the case.

Rinn also testified that he did not receive the notice of impending dismissal of the case. By way of explanation, he apprised the court of the history of the case. It was filed when Rinn was with the firm of Saiontz & Kirk. He severed that relationship, effective March 1, 1986. Prior to doing so, however, he contacted the clerk's office regarding the procedure for changing his address in the 150–200 cases, in which he was counsel of record, then pending before the Circuit Court for Baltimore City. He was advised by the clerk's office that one letter, containing the address change desired, would suffice, for purposes of computer generated notices, to change his address in all open files in which he was counsel of record. Relying on that advice, in February, 1986, Rinn forwarded a letter stating his new address, as of March 1, 1986, to the clerk's office; he did not forward separate change of address forms for each of his open cases. Rinn stated that he also notified the post office of his change of address. Furthermore, Rinn reported "arrangements were made on a daily, bi-weekly basis, to come down to Saiontz & Kirk to pick up any mail that had not been forwarded during that time". Despite the foregoing, Rinn testified that he absolutely did not receive the notice of impending dismissal; it was neither forwarded by the post office to his new address nor picked up at his former law office. On the other hand, Rinn acknowledged that notices concerning other cases in which he was involved were received at the new address.

Although he did not actively represent appellant after he filed suit against it, Rinn did not strike his appearance in the case; he remained counsel of record up to and through the time the case was dismissed. He offered an explanation. He said that just prior to filing suit, he advised appellant that he would no longer do legal work for it and that it should retain new counsel. In September, 1986, he met with appellant and present counsel to discuss the status of appellant's representation, after which he turned his files

involving appellant, including the file in this case, over to present counsel for their review.[3] Rinn assumed that present counsel would enter an appearance in the ordinary course, and, simultaneously, Rinn's appearance would be stricken. He noted, however, that had he received the notice, he would have filed a motion to defer dismissal on several grounds, namely: (1) that the lack of activity in the case was not intentional; (2) that appellant did not have sufficient monies to fund discovery; and (3) that the delay in the case was occasioned by the adversarial relationship between appellant and himself.[4]

Michele Jacobson of the clerk's office confirmed that, consistent with its usual practice and procedure, the clerk's office required only one change of address letter to be submitted by counsel to ensure that computer generated notices pertaining to any open case in which counsel was involved would be sent to counsel at counsel's new address. She noted, however, that such a letter would not ensure that a change of address form would actually be placed in each open file. She also confirmed that, as of December 31, 1986, the computer contained Rinn's new address, although she was unable to tell when it was received and/or placed in the computer.

The notice mailed to Rinn was handwritten, as opposed to computer generated. This indicated, Jacobson said, that, in all probability, the computer was down when the notice was prepared. In such cases, the usual procedure is to send the notice to the address contained on the last pleading in the file. Thus, Jacobson testified that, in the ordinary course of events, the notice of impending dismissal was sent to Rinn at 222 St. Paul Place.

---

**3.** According to Rinn the files were delivered to present counsel not later than October 15, 1986.

**4.** The fee dispute between Rinn and appellant was resolved, with the assistance of present counsel, around the time of the September meeting. The fee dispute involving Baker & Baker was resolved shortly thereafter, certainly prior to the dismissal of the case.

The trial judge denied appellant's motion. In so doing, he made findings of fact as follows: (1) that the last pleading filed in the case prior to the issuance of the notice of dismissal listed Rinn's address as 222 St. Paul Place; (2) that Rinn advised the clerk's office, in February or March of 1986, of his change of address; (3) that Rinn was told by the clerk that for purposes of computer generated notices, it was only necessary that he submit one change of address letter; (4) that the notice in this case was not computer generated, but was done manually, using the last address for the attorney in the file;[5] (5) that notice was sent to 222 St. Paul Place; (6) that Rinn went to 222 St. Paul Place to check his mail, either on a weekly or bi-weekly basis, which was sufficient to allow for receipt of, and timely responses to, the notice; and (7) "that the irregularity referred to in [Maryland Rule 2–535(b)] is not the kind of irregulatory which occurred in this case." The court concluded:

> If any irregularity occurred in this case, it was sending the notice to the wrong address. But what difference did it make because the lawyer, [Rinn] testified that he went to both addresses. So, he would have picked it up. If it went to 222 Saint Paul, he would have received it if it went to 90 Blondell Court. So, no matter where the notice went, the attorney would have received it. Therefore, it would hardly be the kind of irregularity referred to in 2–535. . . .

Alternatively, the court determined that, even if there were irregularity of the kind referred to in Rule 2–535(b), appellant did not act with "due diligence". In support of that conclusion, the court observed that Rinn's explanation for the inactivity in the case from June 10, 1985 through October 28, 1986 "lacked any substance at all." With

---

**5.** The court observed that the clerk's office was misinforming counsel with more than one file in the clerk's office as to counsel's responsibility with respect to changes of address. He noted that since notices are sometimes sent out manually, counsel should have been advised to change the address in each file and not merely rely upon the change of address in the computer.

specific reference to the time period immediately following the last docket entry, the court found that there had been "no effort at all stated to obtain those documents in accordance with discovery, no motion for sanctions, no motion to compel discovery, nothing." Nor was the court impressed by the potential conflict of interest situation in which Rinn found himself vis-a-vis appellant. The judge observed that, although in July, 1986, Rinn advised appellant that he would no longer represent appellant, he made no effort to strike his appearance. Moreover, the court emphasized that appellant did not follow through on Rinn's recommendation and obtain counsel and, as a consequence, nothing happened in the case. In addition to taking notice of the fact that inactivity persisted after the September, 1986 meeting and the delivery of the case file to present counsel, the court commented upon Rinn's and present counsel's failure to act prior to February 25, 1987, even though both knew about the effect of Maryland Rule 2–507. Finally, the court mentioned that the motion to strike was not filed until April 20, 1987, almost two months after appellant learned the case had been dismissed.

## DISCUSSION

■ Maryland Rule 2–535 provides, in pertinent part:
(a) *Generally.*—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.
(b) *Fraud, Mistake, Irregularity.*—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake or irregularity.

"Irregularity", as used in Rule 2–535(b), has been defined as "doing or not doing ... that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done." *Calvert Fire Ins. Co. v. Reick,* 39 Md.App. 620, 625–26, 387 A.2d 789 (1978), quoting

*Mut. Benefit Soc'y v. Haywood,* 257 Md. 538, 541, 263 A.2d 868 (1970) and *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 479, 240 A.2d 239 (1968).[6] "[A] defect in process or proceeding", *Hamilos v. Hamilos,* 52 Md.App. 488, 498, 450 A.2d 1316 (1982), *aff'd,* 297 Md. 99, 465 A.2d 445 (1983), and a dismissal without notice, *Mut. Benefit Soc'y,* 257 Md. at 541, 263 A.2d 868, are examples an irregularity. Irregularity also encompasses the "failure of an employee of the court or of the clerk's office to perform a duty required by statute or a Rule." *See* Maryland Cts. and Jud.Proc.Code Ann. § 6–408, which provides:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to a motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

*See also Maryland Lumber v. Savoy Constr. Co.,* 286 Md. 98, 101–02, 405 A.2d 741 (1979) and Committee note to Rule 2–535 ("This section is intended to be as comprehensive as Code, Courts Article § 6–408.") Thus, the clerk's failure to send a copy of the court's final order in a case to the defendant is an irregularity which authorizes the trial court to revise an enrolled judgment. *Alban Tractor Co. v. Williford,* 61 Md.App. 71, 79, 484 A.2d 1039 (1984), *cert. denied,* 302 Md. 680, 490 A.2d 718 (1985).

To prevail on this appeal, appellant must demonstrate that the record contains sufficient evidence of "irregularity" as to render the court's refusal to strike the enrolled judgment an abuse of discretion.

The determination whether the trial judge was clearly wrong in finding that there was no irregularity in this case

---

6. Appellant does not allege either mistake or fraud. Consequently, we need only address ourselves to whether there is any evidence of an irregularity sufficient to warrant striking the judgment.

must be made in the context of Md.Rule 2-507(d). That Rule provides:

(d) *Notification of Contemplated Dismissal.*—When an action is subject to dismissal pursuant to this Rule, the clerk shall serve a notice on all parties pursuant to Rule 1-321 that an order of dismissal for lack of jurisdiction or prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

Rule 1-321, to which Rule 2-507(d) refers, provides:

(a) *Generally.*—Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading *shall be served upon each of the parties.* If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address. Delivery of a copy within this Rule means: handing it to the attorney or to the party; or leaving it at the office of the person to be served with an individual in charge; or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of that person with some individual of suitable age and discretion who is residing there. *Service by mail is complete upon mailing.*

(b) *Party in Default—Exception.*—No pleading or other paper after the original pleading need be served on a party in default for failure to appear except a pleading asserting a new or additional claim for relief against the party which shall be served in accordance with the rules for service of original process.

(c) *Request to Clerk—Exception.*—A request directed to the clerk for the issuance of process or any writ need not be served on any party. (emphasis added)

The foregoing makes clear, unless the clerk fails to mail the notice required by Rule 2–507(d) to counsel for a party to his or her address "most recently stated in a pleading or paper" filed with the court, no irregularity within the contemplation of Rule 2–535(b) has occurred. That the clerk complied with the requirements of Rules 2–507(b) and 1–321(a) is not open to serious challenge. The notice of impending dismissal was sent to 222 St. Paul Place, the address stated in appellant's Request for Production of Documents, its last "pleading or paper." Moreover, the record is clear, and Rinn's testimony confirms, that Rinn's address immediately prior to advising the clerk's office of his change of address was 222 St. Paul Place. And no one disputes that the notice was mailed; thus, service, as defined by Rule 1–321, was complete.

■ Appellant argues that Rinn's most recent address, for purposes of Rule 1–321, was that stated in the change of address letter, which it denominates a "paper". Unfortunately for appellant, that characterization of the change of address letter is inappropriate. Md.Rule 1–301(a) requires that a "paper", like a "pleading", "contain a caption setting forth (1) the party's or, where appropriate, the matter, (2) the name of the court, (3) the assigned docket reference, and (4) a brief descriptive title of the pleading or paper which indicates its nature." Moreover, a paper, again like a pleading, "shall be served upon each of the parties." *See* Md.Rule 1–321(a). Counsel did not testify that his letter was so captioned, nor that it was served upon each party. It follows, therefore, that his change of address letter was not a paper within the contemplation of the Maryland Rules. Accordingly, appellant may not rely on the address stated in that letter for purposes of the notice required pursuant to Rules 2–507(d) and 1–321(a).

■ Appellant fares no better when we consider his argument that the court's failure to send computer generated notices was an irregularity. It cannot be doubted that

the court clerk testified that the normal procedure for sending out a Rule 2–507 notice was by a computer generated notice. The clerk also testified, however, that when the computer was down, it was the normal procedure to prepare a handwritten notice and send it to the last address stated in a pleading in the file. The latter procedure is no less a normal procedure than is the former. Following a procedure developed to cover just the kind of eventuality that occurred in the case *sub judice* simply is not an irregularity.

■■■■ Appellant next argues that it is inequitable to penalize it because its counsel relied upon the clerk's statement of the normal procedure for effecting changes of address. It insists, therefore, that mailing a notice to counsel's last address after advising counsel that the procedure counsel followed would result in notice being sent to counsel's new address was an irregularity. Thus, appellant says the motion to strike or revise the judgment should have been granted. Preliminarily we observe that irregularity must be found as a necessary predicate before the equities of the situation become a proper subject for consideration. *See e.g., Crawford v. Richards*, 193 Md. 236, 241–43, 66 A.2d 483 (1949) and *Harvey v. Slacum*, 181 Md. 206, 29 A.2d 276 (1942), upon which appellant relies, and *Md. Lumber v. Savoy Constr. Co.*, 286 Md. 98, 102, 405 A.2d 741 (1979), *Shaw v. Adams*, 263 Md. 294, 296, 283 A.2d 390 (1971). Unless the court finds an irregularity, there being no claim of fraud or mistake, it has no discretion, using equitable principles or otherwise, to strike an enrolled judgment. *See Maggin v. Stevens*, 266 Md. 14, 16, 291 A.2d 440 (1972); *Board v. Baden Vol. Fire Dep't*, 257 Md. 666, 670, 264 A.2d 844 (1970); *Himes v. Day*, 254 Md. 197, 202, 254 A.2d 181 (1969); *Kramer v. McCormick*, 59 Md.App. at 205, 474 A.2d 1346. We also observe that proof of a custom, standing alone, is an insufficient basis upon which to establish irregularity. *Maryland Metals, Inc. v. Har-*

*baugh,* 33 Md.App. 570, 574, 365 A.2d 600 (1976). These observations, however, do not, of necessity, require us to conclude that the trial court could not have, and more to the point, should not have found irregularity under the facts *sub judice.*

In determining whether an irregularity occurred the trial court was not restricted to considering if mailing the notice of impending dismissal to counsel's old address, rather than to his new one, was "a failure ... to perform a duty required by statute or rule". In other words, whether any irregularity of process or procedure occurred is properly determined by reviewing the totality of the circumstances. *See Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975).

In this case, Rinn was advised by the clerk's office that in order to effect a change of address in every open file in the clerk's office in which he was counsel of record he need only send one change of address letter, that notices required in those cases would thereafter be sent to the new address. He was told that he did not have to submit a change of address form for each open file. Since this advice only applied to notices which were computer generated, it was, at best, incomplete and, at worse, wrong. The court found as much when it stated that counsel with more than one open file in the clerk's office were being misinformed as to counsel's responsibilities in effecting changes of address.

██ The clerk's advice to counsel was inconsistent not only with counsel's usual responsibility to change his or her address in each open file, but with the court's notice practice when the computer was down. Nevertheless, counsel had a right to rely on that advice. Having caused counsel to believe that a single change of address letter would be sufficient to ensure that all future notices required to be given in any of his open cases would be sent to counsel's

new address, the clerk then sent the notice in one of those cases to counsel's old address. In so doing, the clerk did "that, in the conduct of a suit at law, which, conformable with the practice of the court, ... ought not to be done." *Reick,* 39 Md.App. at 625–26, 387 A.2d 789. Notwithstanding that the clerk followed normal procedure in mailing the notice and our rejection of appellant's argument with respect to computer generated notices, the clerk's action in sending the notice to counsel's last address, in light of counsel's justified reliance on the clerk's advice, was an irregularity. We hold that the trial court's finding to the contrary is incorrect.

This holding does not ultimately benefit appellant, however. Appellant argues that the court improperly shifted the burden of compliance with Rule 2–507 from the clerk to counsel. It reasons that this occurred when the court concluded, from counsel's testimony that counsel picked up his mail at his old address, that the irregularity did not prejudice appellant—that it made no difference since, no matter to which address the notice was sent, counsel would have received it. We do not agree.

■ Irregularity having been determined to exist, the court was permitted to consider equitable factors in deciding whether to strike the enrolled judgment. One such factor is the likelihood that counsel would have received the notice even though it was mailed to his old address. Counsel's testimony bears on that issue. The court did not abuse its discretion in considering it, nor did it err in finding that it militated against striking the enrolled judgment.

Although the trial judge erred in finding that no irregularity had occurred in the giving of the Rule 2–507 notice, he did not err in refusing to strike the enrolled judgment.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.