551 A.2d 869

## J.T. MASONRY COMPANY, INC.

v.

## OXFORD CONSTRUCTION SERVICES, INC.

No. 48, Sept. Term, 1988.

Court of Appeals of Maryland.

Jan. 13, 1989.

Kevin B. Kamenetz (Steven A. Thomas, Moore, Libowitz & Thomas, on brief), Baltimore, for petitioner.

Michael W. Skojec (Michael J. Travieso, Gallagher, Evelius & Jones, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

This certiorari review continues uninterruptedly the lack of success by a plaintiff in attempting to revise, because of claimed irregularity by a clerk of court, a final judgment of dismissal for lack of prosecution. We shall hold that the trial court's denial of relief was justified by the plaintiff's failure to exercise ordinary diligence in seeking revision.

The factual narrative begins in 1983 when Michael G. Rinn, Esq. (Rinn) practiced law with the Baltimore firm of Baker & Baker. One of their clients was the petitioner, J.T. Masonry Company, Inc. (Masonry). Subsequently, the association between Rinn and Baker & Baker ended and Rinn became associated with Saiontz & Kirk, P.A. (SK) whose offices were at 222 St. Paul Place, Baltimore. In August 1984, Rinn filed a complaint in the Circuit Court for Baltimore City on behalf of Masonry against the respondent, Oxford Construction Services, Inc. (Oxford). Rinn was the only attorney to appear for the plaintiff. On the complaint Rinn stated the SK address to be his office address. Oxford, appearing through Thomas N. Biddison, Jr., Esq. (Biddison), answered and counterclaimed. Rinn, for Masonry, answered the counterclaim and, later, M. Jayne Wright, Esq. (Wright), who was apparently engaged by Masonry's insurer to defend the counterclaim, entered her appearance for Masonry by also pleading to the counterclaim. See Rule 2-131(b). On June 10, 1985, Masonry filed a demand for

production of documents on which Rinn again gave the SK office at 222 St. Paul Place as his address. This filing produced the last docket entry which would be generated in the action in the ensuing sixteen months.

Despite some effort between counsel in the summer of 1985 to agree on a date for document inspection, it never took place. By late fall or early winter of 1985 Baker & Baker were claiming legal fees were due them from Masonry. By February 1986 the decision had been reached that Rinn and SK would terminate their relationship effective March 1, 1986. Thereafter Rinn planned to maintain his office in Timonium.

Beginning before this action was filed, and continuing thereafter, the Clerk of the Circuit Court for Baltimore City has not recorded docket entries in a permanently bound book. The clerk continues to maintain a separate folder for each action for the "flat filing" of original papers. Docket entries are stored in a computer memory and are intended to be accessible on demand through video displays and hard copy printouts. The computer program apparently assigns an identifying number to individual attorneys and the computer file of those numbers apparently contains the attorney's name and address.

During February–March 1986 Rinn discussed with one of the staff in the clerk's office of the Circuit Court for Baltimore City the procedure for changing his address in the 150 to 200 cases pending in the Circuit Court for Baltimore City in which his appearance was entered. That clerk advised Rinn that he need only furnish the clerk with the new address which would be inserted in the computer and that the computer would automatically change Rinn's address in all cases in which he appeared. Either orally, or in a writing which is not an exhibit, Rinn requested that the clerk change Rinn's address to 90 Blondell Court, Timonium, Maryland 21093.

The clerk entered this change of address into the computer but the exact date when that was done cannot be

determined. We know that the change had been effected by December 31, 1986, because Biddison obtained a hard copy of the docket entries in this action which were certified on that date and which contained 90 Blondell Court as Rinn's address. No paper reflecting the change of address was filed in the clerk's folder of original papers for this action and no copy of the request for change of address was served on counsel for the other parties in this action or in any other action in which Rinn's appearance was entered.

By the summer of 1986 Baker & Baker's claim against Masonry was in suit and it was apparent that Rinn would be called as a witness for Baker & Baker. In addition, Rinn's billing for his legal services rendered to Masonry had not been paid, and Masonry had not advanced to Rinn the anticipated costs of depositions in the instant matter. For these reasons, Rinn gave Masonry notice, in July 1986, that it should engage new counsel for the matters which Rinn was handling for Masonry. Rinn never, however, struck his appearance in this action. See Rule 2–132(b).

In September 1986 a meeting was held, attended by the principal of Masonry, Rinn and one or more representatives of the Baltimore law firm of Moore, Libowitz & Thomas (MLT). Shortly thereafter Rinn delivered his files on Masonry matters to MLT. Rinn anticipated that MLT would enter an appearance for Masonry in the instant matter and that Rinn would strike his appearance at that time. The claims of Rinn and of Baker & Baker for legal fees from Masonry were also resolved by early fall 1986.

Meanwhile, by October 28, 1986, there had been no docket activity in this action since June 10, 1985. The computer in the clerk's office is apparently programmed to search docket data to identify those civil actions which are subject to dismissal under Rule 2–507. When functioning, the computer also generates the notice which Rule 2–507(d) requires. Section (d) reads:

"When an action is subject to dismissal pursuant to this Rule, the clerk shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of ...

prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule." Rule 2–507(e) provides:

"On motion filed at any time before 30 days after service of the notice, the court for good cause shown may defer entry of the order of dismissal for the period and on the terms it deems proper."

In the instant case the docket entries stored in the computer reflect that a Rule 2–507(d) notice was sent on October 28, 1986. The file folder of original papers does not contain any hard copy of this notice. Rinn made affidavit in support of a motion filed later. in this action, and Rinn testified at a hearing on that motion, that he did not receive any notice of contemplated dismissal. Biddison and Wright each received a copy of the notice. Their copies reflect that the notice was not fully computer-generated. The boilerplate form of the notice was printed by a computer-driven printer but the case-specific information on their respective notices was handwritten. That information consists of the case caption and number, the name of the attorney to whom the notice is addressed, the address to which the notice is sent and the date of mailing, namely, "10–28–86." [1]

Neither Masonry nor Oxford filed a motion for deferral of dismissal as permitted by Rule 2–507(e). Although Oxford's counterclaim was also subject to dismissal, Oxford had no interest in maintaining the counterclaim if the complaint were dismissed. Consequently, on Monday, Decem-

---

1. Biddison's copy of the notice was addressed by long hand to 1100 One Charles Center, Baltimore, Md. 21201, the address used on the counterclaim he filed for Oxford on November 19, 1984. The hard copy of docket entries generated December 31, 1986 shows Biddison's address to be 218 North Charles Street, Suite 400, Baltimore, MD. 21201. There is no paper in the file advising of a change of address for Biddison. Nor does the record reflect when, if ever, he requested a computer-generated change of address.

Wright's notice was sent to P.O. Box 6705, Towson, MD 21285–6705, the address given by her on her entry of appearance filed May 6, 1985. The docket entries generated December 31, 1986, indicate "no address found" for Wright.

ber 1, 1986, an order of dismissal was either automatically or specially entered into the computer-based docket entries.[2]

MLT first attempted to enter an appearance for Masonry on February 25, 1987. That paper and a request for a trial date which had accompanied it were returned by the court clerk with a pencil notation reading, "Dismissed [Rule] 2–507 12–1–86."

On April 20, 1987, Masonry, through MLT, moved to strike the judgment of dismissal. The motion alleged that Masonry had "never received notice of a contemplated dismissal," an omission which MLT argued constituted an irregularity or mistake within the meaning of Rule 2–535(b). That Rule reads: "On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity." The Committee note to Rule 2–535(b) advises that it "is intended to be as comprehensive as" Md. Code (1974, 1984 Repl.Vol.), § 6–408 of the Courts and Judicial Proceedings Article (CJ). That section provides:

> "For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judg-

---

**2.** This judgment of dismissal was entered pursuant to Rule 2–507(f) which provides:

> "If a motion has not been filed under section (e) of this Rule, the clerk shall enter on the docket 'Dismissed for lack of ... prosecution without prejudice' 30 days after service of the notice. If a motion is filed and denied, the clerk shall make the entry promptly after the denial."

The clerk did not send copies of this order of dismissal to counsel for the parties. Md. Rule 1–324 in part provides that "[u]pon entry on the docket of any order or ruling of the court not made in the course of a hearing or trial, the clerk shall send a copy of the order or ruling to all parties entitled to service under Rule 1–321...." *Dypski v. Bethlehem Steel Corp.*, 74 Md.App. 692, 539 A.2d 1165, *cert. denied*, 313 Md. 30, 542 A.2d 857 (1988), held that Rule 1–324 requires that a copy of an order of dismissal under Rule 2–507(f) be sent to the parties. *Dypski* was decided one week after the decision by the Court of Special Appeals in the instant matter. Masonry did not raise the Rule 1–324 point in the Court of Special Appeals. Masonry therefore ordinarily could not, and it did not, raise the point in its petition for certiorari.

ment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule."

At a hearing on Masonry's motion, Rinn and the clerk's office employee who handles Rule 2–507(d) notices testified. Rinn stated that, in addition to causing his change of address to be inserted in the computer, he advised the post office of his change of address and, after March 1, 1986, he went approximately biweekly to the SK offices in order to pick up any mail which had been delivered for him there. The clerk explained that Rule 2–507(d) notices are sometimes prepared by longhand, e.g., when that computer program is down or when defense counsel request that a notice be sent in an appropriate case. In sending longhand notices the ordinary procedure is to check for any change of address in the computer file of attorneys' identification numbers, names, and addresses. If that computer file were down, however, the clerk would use the most recent address appearing in the file folder of original papers for the action.

There was no evidence produced by Masonry at the hearing directly describing any MLT activity respecting this suit in the period between the September 1986 meeting with Rinn, and February 1987 when MLT attempted to enter an appearance. Nor was there any evidence explaining why Masonry did not move to revise the judgment until April 15, 1987, although it had actual knowledge by the end of February that the action had been dismissed December 1, 1986.

The circuit court denied Masonry's motion. The court assumed, as argued by Masonry, that the notice of contemplated dismissal was mailed to Rinn at SK. This assumed failure by the clerk to use the new address which Rinn had previously supplied did not make any difference in the court's view, however, because the court accepted Rinn's testimony that he frequently visited SK to pick up his mail there. Thus, the alleged error on the clerk's part had not

prevented a timely motion for deferral of dismissal under Rule 2–507(e). On that basis the circuit court held the claimed error was not an irregularity within the meaning of Rule 2–535(b). The court further held that Masonry had not been diligent from June 10, 1985, through October 28, 1986, and in the period from the judgment of dismissal to the filing of the motion to revise the judgment.

The Court of Special Appeals affirmed, despite its conclusion, contrary to that of the circuit court, that there was an irregularity. *J.T. Masonry Co. v. Oxford Constr. Servs., Inc.*, 74 Md.App. 598, 539 A.2d 694 (1988). The intermediate appellate court reasoned that the clerk, "[h]aving caused counsel to believe that a single change of address letter would be sufficient to ensure that all future notices required to be given in any of his open cases would be sent to counsel's new address, . . . then sent the notice in one of those cases to counsel's old address." *Id.* at 611–12, 539 A.2d at 700. "[T]he clerk's action in sending the notice to counsel's last address, in light of counsel's justified reliance on the clerk's advice, was an irregularity." *Id.* at 612, 539 A.2d at 700. The appellate court nevertheless reasoned that the circuit court was entitled to consider equitable factors in deciding whether to utilize the irregularity to strike the judgment. One equitable factor was the likelihood that Rinn received the notice at his old address. Consequently, the Court of Special Appeals held that the circuit court did not abuse its discretion in denying relief from the judgment. We granted certiorari and shall affirm, but for reasons which differ from those stated by the Court of Special Appeals.

We shall assume that there was an irregularity.[3] Nevertheless, the judgment of the circuit court was properly

---

**3.** The procedure recommended by the clerk to Rinn would generate, when the computer is functioning, notices originating with the court to an attorney's new address in all cases in which that attorney appeared. That computer program, however, apparently does not alert other counsel or unrepresented parties that one of the attorneys in an action has changed address. If an attorney files a written notice

affirmed. The power of the circuit court to revise a final judgment which has been entered for more than thirty days requires, in addition to fraud, mistake, irregularity or clerical error, "that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious cause of action or defense." *Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250, 252 (1984). The requirement of ordinary diligence is well settled. *See Maryland Lumber Co. v. Savoy Constr. Co.,* 286 Md. 98, 405 A.2d 741 (1979); *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 347 A.2d 837 (1975); *Weitz v. MacKenzie,* 273 Md. 628, 331 A.2d 291 (1975); *Owl Club, Inc. v. Gotham Hotels, Ltd.,* 270 Md. 94, 310 A.2d 534 (1973); *Cohen v. Investors Funding Corp.,* 267 Md. 537, 298 A.2d 154 (1973); *Ventresca v. Weaver Bros.,* 266 Md. 398, 292 A.2d 656 (1972); *Harvey v. Slacum,* 181 Md. 206, 29 A.2d 276 (1942). Recognizing the diligence hurdle, Masonry argues that, but for the clerk's error in sending the notice of contemplated dismissal to the wrong address, it could have moved pursuant to Rule 2–507(e) for a deferral of dismissal based upon a showing of good cause. Masonry further argues that under *Powell v. Gutierrez,* 310 Md. 302, 529 A.2d 352 (1987) good cause under Rule 2–507(e) would have required only a demonstration that Masonry was ready, willing, and able to proceed with the

---

of change of address in an action, that paper is subject to the requirements of Rules 1–311(a) and 1–321(a). Rule 1–311(a) requires that "[e]very pleading or paper filed shall contain the address and telephone number of the person by whom it is signed." Rule 1–321(a) generally requires every pleading or other paper to be served upon each of the parties to an action. "Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address." *Id.* Under ordinary circumstances a party complies with Rule 1–321(a) by mailing the service copy of a paper, which originated with that party and was intended for an attorney who had relocated, to the address shown on that attorney's most recent pleading or paper. This is so even if that address is not the current address reflected in the data stored in the computer. From the standpoint of compliance with the Rules, we therefore have grave doubts that Rinn was justified in relying on the procedure recommended by the clerk.

action against Oxford, and that the delay in prosecution was not wholly without justification. Masonry submits, in effect, that where the final judgment, which has been entered for more than thirty days, is a judgment of dismissal based upon an irregular notice of contemplated dismissal, the showing of diligence in seeking revision of the judgment need be no greater than the showing of good cause to defer dismissal under Rule 2–507(e).

Even if we agreed with Masonry that there is such a relationship between the two rules, Masonry's argument fails to take account of the fact that Masonry's new counsel, MLT, had actual knowledge of the judgment of dismissal by the end of February 1987. Had Masonry been served with notice of contemplated dismissal at that time, Rule 2–507(e) would have allowed thirty days within which to move to defer entry of the dismissal. Masonry did not move to challenge the dismissal until forty-five days or more after it uncontrovertedly knew that judgment had been entered. The circuit court could not have abused its discretion in finding that Masonry did not act with diligence when Masonry took a longer time to respond to actual knowledge of the dismissal than the time within which it would have been required to respond to a notice of contemplated dismissal.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, J.T. MASONRY COMPANY, INC.