## McCune v. McCune, Appellant.

*Divorce—Practice, C. P.—Appointment of master—Irregularity—Adultery.*
　An order irregularly appointing a master in divorce prior to the return of an order of publication, cannot be taken advantage of on appeal by the respondent, where it appears that after the return of the order of publication the respondent had personal notice of the appointment of the master, appeared before him by counsel, testified in her own behalf and called a number of witnesses, and that no exception was taken before the master or the court to the want of jurisdiction of the master.

A divorce will be granted to a husband on the ground of adultery of his wife, where the inferences of the respondent's guilt are fairly deducible from the testimony, although there is no direct evidence to establish it.

Argued March 13, 1906.　Appeal, No. 15, March T., 1906, by defendant, from order of C. P. Cumberland Co., Feb. T., 1904, No. 65, granting a divorce in case of John T. McCune v. Mattie M. McCune. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Libel for divorce.

From the record it appeared that the libel was filed on December 8, 1903. The respondent was not served personally with the subpœna, but it was returned "non est inventus" by the sheriff on January 16, 1904. The same return was made by the sheriff to the alias subpœna on April 23, 1904. On April 20, 1904, Chester C. Bashore, Esq., entered appearance for the respondent. On July 12, 1904, an order of publication was procured, which was duly returned, on September 12, 1904, by the sheriff, indorsing thereon that notice to respondent was given by publication in the American Volunteer, a newspaper published in Carlisle, Penna., for four successive weeks.

Jasper Alexander, Esq., was appointed master on September 8, 1904. The master reported in favor of the libelant.

Exceptions to the master's report were dismissed by the court in an opinion by SHULL, P. J., specially presiding, which was as follows:

The plaintiff filed his libel in divorce, alleging adultery of the wife. The master upon various findings recommended that the prayer be granted, to which respondent excepts. The fifth finding of fact is that no direct evidence is adduced to establish the illicit relations between her and the co-respondent, but that the inferences are fairly deducible from the testimony that she is guilty of criminal intercourse with the co-respondent. It was disclosed at the argument that libelant was approaching his three score and ten while respondent had attained but little more than half that age.

The co-respondent, Throne, was for some time a frequenter at the home of the McCunes, which occasioned strained relations between libelant and respondent, at the same time discord was breeding in the home of Throne, who had a wife and childen in the same town. The house at which he called was being marked as if visited by a plague and at one time was stoned. The sensibilities of the people in the neighborhood were incensed and outraged at the familiarity and indiscretion of these parties. The husband, incapable of longer enduring the unpleasantness of his environment, and fearing personal injury, fled from his home. Hardly had his shadow passed from the door when Throne was enthroned as lord of the manor. In the language of the Supreme Court in Graham v. Graham: "Practically he was crowded out of his home." Throne found it convenient to have her pack his bucket, wash and cook for him, and then later to find repose at night for his weary, burdened body and mind upon the pillows within the portals of her attractive home, when he says he "feared to go home" because his "wife made threats." She is then advised by Throne to "get out of the damned place," and quickly they both get out, she to Harrisburg keeping a very restricted boarding house, and Throne not as a common lodger, but as one who pays the rent and furnishes the fuel. These are facts, together with a letter adduced in evidence, referred to by the master as a basis for his finding. True, it is all circumstantial

250·     McCUNE v. McCUNE, Appellant.

Statement of Facts—Counsel for Parties. [31 Pa. Superior Ct.

evidence, but they are no trifles light as air but confirmations strong as proofs of holy writ, and necessarily lead to the conclusion of the adulterous practices. They are not mere groundless suspicions emanating from an injured husband's brain but are basic principles from which illicit intercourse may properly be arrived at by fair and necessary inferences.

It is held in a number of common pleas court decisions that imprudent acts, improper decorum, unseemly attitudes, flippant bearing, etc., are not in themselves sufficient to show criminal conduct which would justify a rupture of the marital bond on the ground of adultery: Ginther v. Ginther, 15 Pa. C. C. 130; Garr v. Garr, 19 Pa. C. C. 502. But in the case at bar we have all these supplemented by things more grave and serious. True, the co-respondent denies the liaisons, but he admits about everything else, and his testimony must be viewed in the light of his interest. Vide fourth specification of error: Cornelius v. Hambay, 150 Pa. 359. The respondent also asserts her innocence but the story of her denial was told of many centuries ago in these words: "Such is the way of an adulterous woman; she eateth, and wipeth her mouth, and saith, I have done no wickedness:" Prov. 20.

We are of the opinion that the recommendation of the master is free from error, and that respondent is entitled to no costs.

And now, July 5, 1905, the exceptions to report of the master are overruled, and it is ordered, adjudged and decreed that said Mattie M. McCune be divorced and separated from the society, fellowship and company of the libelant in all times to come, and him, the said John T. McCune, from the marriage bond contracted and entered into with respondent as if they had never been married or as if she, the said Mattie M. McCune, were naturally dead.

*Error assigned* was the decree of the court.

*Chester C. Bashore*, for appellant.—The appointment of the master was without authority in law.

*S. B. Sadler*, with him *Paul Willis*, for appellee.

OPINION BY ORLADY, J., June 30, 1906 :

In divorce cases the law contemplates that the proceeding shall be continuously adverse, and to secure jurisdiction of the respondent, there must be either the actual personal service of a subpœna, or its statutory equivalent. The alleged irregularity, of which the respondent in this case complains, is not sufficent to warrant a reversal of the decree, for the reason that after the return non est inventus of the second subpœna, her counsel entered an appearance of record, which of itself would not be sufficient to bring her properly before the court, but following this, there was a regular order made for service by publication, and upon the return of this order, a formal personal notice was given to the respondent of the appointment of the master, and the date and place named when he would receive testimony. In answer thereto the respondent appeared before the master with her counsel; submitted herself to examination, in her own behalf; cross-examined the libelant's witnesses and called a number of witnesses in support of her defense. No exception was taken to want of jurisdiction, either before the master or in the court below, and the question is raised on this appeal for the first time. Under the facts, she delayed too long in questioning the jurisdiction of the court, while she was seeking its decree in her favor. The first assignment of error is not sustained.

The other assignments are to the sufficiency of the evidence to warrant the making of the decree of divorce. We have read with care all the testimony, and agree fully with the conclusion reached by the master and the court. It is not necessary to analyze the evidence in this case. The respondent's testimony and her letters written to her husband can have but one interpretation, and that is conclusively against her contention.

The decree is affirmed.