## BETTY ESTELLE LOVERING *v.* ROBERT DONALD LOVERING

[No. 212, September Term, 1977.]

*Decided December 20, 1977.*

The cause was argued before THOMPSON, MELVIN and WILNER, JJ.

*Theodore L. Mast,* with whom were *Bill L. Yoho, Steven M. Jacoby, Robert S. Hoyert* and *Hoyert & Yoho* on the brief, for appellant.

*John R. Foran,* with whom were *Horowitz, Oneglia, Goldstein & Foran, P.A.* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Betty Estelle Lovering, the appellant, filed a suit for divorce *a mensa et thoro* in the Circuit Court for Prince George's County. Robert Donald Lovering, the appellee, filed a motion raising preliminary objections alleging that the parties had been previously divorced *a vinculo matrimonii* by the Court of Common Pleas of Dauphin County, Pennsylvania. The chancellor, Robert J. Woods, gave full faith and credit to the Pennsylvania divorce and dismissed the complaint. The appellant wife's primary contention is that the Pennsylvania Court never acquired personal jurisdiction and, therefore, its decree is not entitled to full faith and credit.

The parties were married on June 26, 1952. The wife had a history of mental illness dating back to 1960, and had been in and out of mental institutions during 1970 and 1971. There is no claim the wife was at any time *non compos mentis.* On January 28, 1971, the husband filed a suit for divorce in the Court of Common Pleas of Dauphin County, Pennsylvania. The wife, who was hospitalized in Illinois at the time suit was filed, was not served with the complaint. When the wife was discharged on April 17, 1971, she returned to Pennsylvania, and her husband asked her to sign a separation agreement. No mention was made of the pending divorce action. The separation agreement had been drafted by the husband's attorney and was signed by the wife on April 22, 1971 at the office of her attorney, Bruce Grove, Jr. Immediately after signing the separation agreement, the wife returned to Illinois and soon thereafter was admitted to another mental institution. On June 1, 1971, the divorce complaint was reinstated, and Bruce Grove, Jr. entered his appearance as attorney for the wife. He accepted service of process but did not file an answer or appear at the hearing of the case. Based upon the appearance of Bruce Grove, Jr. the Pennsylvania Court found that it had jurisdiction over Mrs. Lovering and on September 30, 1971 granted a divorce to the husband.

In 1972, the husband moved from Pennsylvania to Maryland and on June 11, 1976, the wife filed this suit for divorce. The wife maintained that the Pennsylvania divorce

was invalid because the appearance of Bruce Grove did not confer jurisdiction on the court as his appearance was unauthorized. According to her testimony, she never communicated with Mr. Grove other than during the signing of the separation agreement and at that time no mention was made about the suit for divorce. She also stated that Mr. Grove had been retained by her husband and she had never authorized him to represent her in any capacity. On cross-examination Mrs. Lovering did admit receiving various letters from Mr. Grove, including one about the filing of the divorce action, while she was in Illinois, but she did not pay any attention to them. She admitted at the time she received these letters that she regarded Bruce Grove as her attorney. The chancellor found Mrs. Lovering had failed to prove the appearance of Bruce Grove was unauthorized.

## I Jurisdiction of the Pennsylvania Court

Relying on *Sanders v. Sanders,* 12 Md. App. 441, 278 A. 2d 615 (1971), appellant argues that procedural due process requires a strict adherence to the statutory rules of service of process upon the defendant in the Pennsylvania proceedings. While it is conceded that the wife was not served with process according to the rules of service in Pennsylvania, both the Pennsylvania court and Judge Woods found that the court acquired personal jurisdiction over her by virtue of the appearance of Bruce Grove, a licensed Pennsylvania attorney. Mrs. Lovering mounts a twofold attack on this finding. First, she argues there was no evidence to show Mr. Grove was authorized to enter his appearance for her, and, second, mere entry of an appearance is insufficient to confer jurisdiction on the court under Pennsylvania law.

The appellant's first argument mistakenly places the burden of proving authorization on the appellee when she had the burden of showing the entry was unauthorized. The general rule is that there is a presumption that the entry of an attorney in an action for a party is authorized and in order to overcome that presumption there must be clear and convincing evidence of a lack of authority. *Bethlehem Steel Corp. v. Devers,* 389 F. 2d 44 (4th Cir. 1968); *Grey v. First*

*National Bank,* 393 F. 2d 371 (5th Cir. 1968); *In Re 125 Criminal Appeals,* 113 R. I. 365, 321 A. 2d 294 (1974). The chancellor found that Mrs. Lovering's testimony was too equivocal to meet this standard of proof. There is no basis on which·we can say the finding was clearly erroneous under Md. Rule 1086, particularly when we consider she waited almost five years after she admittedly knew of the divorce before mounting her attack.

The appellant also argues that even if the appearance was authorized, the mere written entry of appearance was insufficient to confer jurisdiction. Generally, a party who enters a general appearance either in person or by counsel consents to the jurisdiction of the court and waives the defense of a lack of jurisdiction over the person. *See McGinnis v. Rogers,* 262 Md. 710, 733-734, 279 A. 2d 459 (1971); *Downey v. Baltimore Transit Co.,* 197 Md. 245, 78 A. 2d 666 (1951); *Restatement* (Second) *of Conflict of Laws* § 33, Comment b (1971).[1]

The appellant implicitly recognizes this general rule but maintains the mere entry of a general appearance by an attorney is insufficient to confer jurisdiction under Pennsylvania law. In support of this argument she cites *McCune v. McCune,* 31 Pa. Super. 248 (1906), as well as some old trial court decisions. In *McCune* the Court noted that the entry of an appearance by counsel was not sufficient, in and of itself, to confer jurisdiction over a party in a divorce case. The rationale for this decision was that if a party attempted to waive a defect in service of process by entering an appearance the suit was deemed to be collusive. This result was changed by 1929 Pa. Stat. Ann. tit. 23 § 31, which provided:

"The respondent may, in any case brought under the provisions of this act, cause an appearance to be entered, and file an answer to the petition or libel,

---

1. Restatement (Second) of Conflict of Laws § 33, Comment b states: "A defendant makes an appearance in an action whenever, either in person or by an authorized attorney, he takes any part in the action, *whether by formal entry of appearance* or by an answer or demurrer or motion. . . ." (emphasis added).

> and the entry of a general appearance shall be equivalent to personal service of the subpoena and libel.
>
> "The entry of a general appearance by, or in behalf of, a respondent *shall not be deemed collusion.*" (emphasis added).

The first paragraph of § 31 was suspended by Rule 1459 of the Pennsylvania Rules of Civil Procedure but this did not substantially change the effect of a general appearance. The suspension was put in perspective in *Bentley v. Bentley,* 66 Pa. D. & C. 596, 598 (1948) when the court stated:

> "[W]e think that the suspension of this provision of the divorce law was made because the matter was already covered by the Rules of Civil Procedure. . . .
>
> . . .
>
> "It is, therefore, our opinion that it was the intention of the authors of the new rule and of the Supreme Court to make no change in the law relating to the effect of a general appearance in [a divorce case]. . . ."

In *Hohlstein v. Hohlstein,* 223 Pa. Super. 348, 296 A. 2d 886 (1972), the Court discussed the effect of an appearance. A suit for divorce was instituted in a county where venue was improper. The husband entered his appearance through an attorney but did not contest the case. After the master had filed his opinion the trial judge dismissed the suit on the ground of improper venue. On appeal the dismissal was overturned. In its opinion the Court noted the defense of improper venue was not waived by virtue of the entry of an appearance but found the failure of the husband to raise the defense by way of preliminary objection under Rule 1032 [2] amounted to a waiver of the defense. The Court stated:

---

2. Rule 1032 of Pennsylvania Rules of Civil Procedure provides:
"A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, except
"(1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and the objection of failure to state a legal defense to a claim may also be made by

> "Although it is clear that appellee's entry of appearance did not constitute a 'general appearance' so as to waive all defenses, it is likewise evident that by failing to raise the defense by way of preliminary objection and by failing to contest in any form whatsoever the proceedings before the Master, appellee acted by way of a general appearance thereby waiving his right to raise improper venue." 296 A. 2d 888.

The defense of a lack of personal jurisdiction, like that of improper venue, is waivable. See Rule 1032 (quoted in note 2). Under the reasoning of *Hohlstein,* Mrs. Lovering consented to the jurisdiction of the court by virtue of her failure to file a preliminary objection after she had entered her appearance. As the appellant in the instant case made no preliminary objection in the Pennsylvania proceedings, we affirm the decree below.

## II Memorandum Opinion

The appellant's second assignment of error centers around the chancellor's refusal to file a memorandum opinion. The appellant argues that a written opinion was required under Md. Rule 18 but the chancellor held that the rule does not require the filing of a written opinion unless the case is tried upon its merits. Although it would have been helpful to this Court had the chancellor filed a memorandum opinion, we agree that he is not required to do so under the clear language of the rule.[3]

*Decree affirmed.*
*Appellant to pay the costs.*

---

a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and

"(2) that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall dismiss the action."

3. Md. Rule 18 b. *"Memorandum of Grounds for Decision.*

"Before or within fifteen days after entry of an appealable final judgment in a contested action tried upon the merits without a jury, the court shall dictate to the court stenographer or reporter, or prepare and file in the action, a brief statement of the grounds for its decision and the basis of determining the damages, if any."