739 A.2d 387

**Cheryl CHAPMAN, Personal Representative of the Estate of Henry Norman Cole, II, et al.**

v.

**Marie KAMARA, Individually, etc.**

**No. 18, Sept. Term, 1998.**

Court of Appeals of Maryland.

Oct. 25, 1999.

428

Thomas Fortune Fay, David J. Perrone, on brief, Washington, DC, for petitioners.

Gerard J. Stief, Associate General Counsel (Robert J. Polk, General Counsel; Robert J. Kniaz, Deputy General Counsel, on brief), Washington, DC, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

This case arises out of an automobile accident that occurred in Prince George's County. Several of the parties to that accident filed a "friendly suit" [1] in the Circuit Court for Prince George's County, and the court entered a consent judgment. Several years later, parties to the friendly suit became concerned with the preclusive effect of that consent judgment on a subsequent lawsuit filed in federal court, and moved to vacate that judgment. The Washington Metropolitan Area Transit Authority (WMATA), which was not a party to the suit, but was a party to the subsequent federal lawsuit, moved to intervene as a matter of right in the motion to vacate. The circuit court granted WMATA's motion to intervene and denied the motion to vacate judgment. We granted the writ of certiorari to consider the following questions:

I. Whether WMATA had a justiciable interest in the "friendly suit" in the Circuit Court for Prince George's County such as permitted intervention in the action for the purpose of opposing the motion to vacate the judgment?

II. Whether the judgment by consent in the "friendly suit" should have been vacated as requested by both defendants and consented to by both plaintiffs?

III. Whether, in the absence of any service upon her or notice to her of the proceedings, Renee Cole is entitled to have the judgment against her set aside?

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. A "friendly suit" is defined at BLACK's LAW DICTIONARY 667 (6th ed.1990) as "any suit instituted by agreement between the parties to obtain the opinion of the court upon some doubtful question in which they are interested." The trial court defined a "friendly suit" as "the means by which an insurance company may obtain finality for the settlement of claims made by a minor. Because the minor is not competent to enter into a binding contract (a Release), a judgment is entered to preclude further litigation of any claim resolved with the insurance company on behalf on the minor."

IV. Whether the entry of appearance of an attorney on behalf of an estate not yet in existence is valid, permitting relief to be granted against the estate?

## I.

On October 11, 1991, Henry N. Cole, II was driving a van in Prince George's County. The vehicle collided with a telephone pole. Henry N. Cole, II, was seriously injured in the accident, and died from his injuries approximately fourteen months later. Seven passengers were in the van, each of whom sustained physical injury. Among the injured passengers were two minors, Russell Cole (the brother of the decedent) and Arouna Koroma.

On December 23, 1993, the Reverend Henry N. Cole and Marie Kamara, the parents of Russell Cole and Arouna Koroma, filed a suit in the Circuit Court for Prince George's County on behalf of the two minors and individually. This was characterized as a "friendly suit," filed to effectuate a settlement of remaining claims under the insurance policy of Renee Cole, the owner of the van and the step-mother of the driver. The named defendants were the estate of Henry N. Cole, II, as the driver of the van, and Renee Cole, as the owner. Renee Cole had insured the van for up to $100,000 under a policy issued by Government Employees Insurance Company (GEICO).

Marie Kamara sued the estate and Renee Cole for $29,296.80 as mother and next friend of Arouna Koroma, and for $15,053.20 individually. Reverend Cole sued the estate for $5,508.27 as father and next friend of Russell, and for $8,741.73 individually. He did not sue Renee Cole.[2] An attorney hired by GEICO consented to the entry of judgment against the estate and Renee Cole.

The complaint alleged that Henry N. Cole, II "did negligently and carelessly operate the vehicle so as to cause it to leave the roadway," and that "as a consequence of the negli-

---

2. Reverend Cole and Renee Cole were married.

gence and carelessness of the decedent," the minor plaintiffs sustained injury. The complaint also alleged that the parents had sustained and would continue to sustain medical expenses and loss of services. Finally, in the name of Marie Kamara but not Reverend Cole, the complaint alleged that the decedent was operating the van as the agent, servant, and employee of Renee Cole.

On the day the complaint was filed, the insurance company counsel filed an answer on behalf of the estate and Renee Cole, denying liability generally. Also on that day, the Circuit Court for Prince George's County entered a consent judgment against the defendants for the amounts prayed. The plaintiffs filed on that date an order of satisfaction, marking the judgments as paid and satisfied.[3]

On October 7, 1994, Reverend Cole petitioned for administration of the estate and was appointed personal representative.[4] Attorney Cheryl Chapman represented Reverend Cole in that petition. On the same day, Reverend Cole, as the personal representative of the estate, and through counsel, filed a wrongful death and survival action against WMATA in the Circuit Court for Prince George's County.

In the wrongful death count, Reverend Cole filed suit as surviving parent of Henry Cole, II, as well as to the use of Nankita Boseman, natural mother of the decedent. In the survival action, Reverend Cole filed suit as the personal representative of the estate. In that complaint, the plaintiffs alleged that a WMATA bus caused the accident when it

---

**3.** Trust accounts were established on behalf of the minors. On May 12, 1994, the attorney for Marie Kamara filed a petition to withdraw $8,000 from the trust to purchase a car for her son. The court granted the request on May 23, 1994. On July 14, 1995, Arouna Koroma, having reached the age of majority, requested that the trust be terminated and all remaining funds be transmitted to an account in his name. The court ordered termination of the trust and transfer on July 17, 1995.

**4.** On April 5, 1996, Reverend Cole resigned as personal representative of the estate. Cheryl Chapman was then appointed personal representative.

crossed the center line, causing decedent to veer off the road into a utility pole in an attempt to avoid a collision.

WMATA removed the case to the United States District Court for the District of Maryland, Southern Division. In that court, the case is captioned *Henry N. Cole, as Personal Representative and Surviving Parent of Henry N. Cole, II, Deceased, and to the Use of Nankita Boseman vs. Washington Metropolitan Area Transit Authority,* Civil Action No. PJM–94–3185.

On March 29, 1996, WMATA filed a motion for summary judgment in the federal suit. WMATA argued that because the consent judgment in the friendly suit was based on the finding that decedent's negligence had caused the accident, Reverend Cole and the estate were collaterally estopped from subsequently arguing, in the federal suit, that WMATA's negligence, and not the negligence of decedent, had caused the accident.

On April 17, 1996, Cheryl Chapman, as personal representative of the estate, and Renee Cole filed a motion to vacate the consent judgment entered on December 23, 1993, alleging lack of personal jurisdiction based on defective service of process. Renee Cole argued that she was never served with process in the suit and that she did not consent to the entry of judgment against her. The estate argued that it could not have been served with process in the December, 1993, action because the estate did not come into existence until Reverend Cole was appointed personal representative in October, 1994. With this motion, the parties filed an affidavit of Russell Cole, who had then attained the age of majority; in the affidavit, he consented to the motion to vacate the judgment. On May 3, 1996, the parties filed an affidavit of Arouna Koroma, indicating that he had no objection to the motion to vacate the judgment. All parties agreed that the suit filed in December, 1993, was the culmination of negotiations of the settlement reached between the plaintiffs and GEICO.

On May 3, 1996, pursuant to Maryland Rule 2–214(a), WMATA filed a motion to intervene as a matter of right, and

an opposition to the estate's motion to vacate judgment. WMATA took no position on Renee Cole's motion to vacate the judgment against her.

WMATA argued that a consent judgment was entered against the estate in a negligence action brought by the two minors and their representative parents. Implicit in that judgment, it asserted, was the determination that the decedent, and therefore the estate, was negligent, and that his negligence was a proximate cause of the injuries sustained by the minor plaintiffs. Even though the judgment against the estate was a consent judgment, WMATA continues, the estate is nonetheless collaterally estopped from relitigating the issue of the decedent's negligence. Because the prior judgment establishes contributory negligence, this finding most likely would bar a claim by the decedent if he had survived the accident and sued WMATA for personal injuries. As a result, the consent judgment entered against the estate in this case has legal significance beyond merely protecting the defendant and the insurer against later suits by the minor plaintiffs.

The plaintiffs opposed WMATA's motion to intervene. They argued that WMATA has no justiciable interest in the transaction because the consent judgment proceeding was a matter solely between the parties to that action. They further argued that all interested parties to the consent judgment agreed to the motion to vacate judgment. Finally, they argued that WMATA's only interest is in avoiding a trial on the merits in the federal lawsuit, which does not amount to a justiciable interest.

On May 14, 1996, Marie Kamara, through counsel, responded to the plaintiffs opposition to WMATA's motion to intervene. She objected to the plaintiffs' statement that "all of the parties to the consent judgment proceedings of December 23, 1993 have agreed to the motion to vacate," and stated that she, individually, specifically had taken no position to date, and had neither consented to nor opposed the plaintiffs' motion to vacate.

The trial court granted WMATA's motion to intervene and denied the plaintiffs' motion to vacate. The court ruled that the insurance company attorney's appearance on behalf of Renee Cole was authorized. The trial judge further found that his appearance as counsel for the estate, in a lawsuit in which the future personal representative, Reverend Cole, was a party and was represented by other counsel, was authorized and consequently waived any claim of lack of service of process on or jurisdiction over the estate. The court also found that Reverend Cole, as the future personal representative of the estate could act to resolve claims against the estate when the resolution of those claims did not deplete any assets of the estate, but rather was accomplished by the payment of funds from an automobile liability insurance carrier.

The estate and Renee Cole filed a timely appeal to the Court of Special Appeals, which affirmed. *See Chapman v. Kamara*, 118 Md.App. 418, 702 A.2d 977 (1997). The court held that the trial court was correct in ordering intervention as a matter of right. *See id.* at 427, 702 A.2d at 982. It also held that under Section 6–105(a) of the Estates and Trusts Article, personal representatives in some circumstances have the power to act on behalf of an estate prior to appointment. Therefore, the court held, "Reverend Cole, as the future personal representative, was not incapable of authorizing [GEICO's counsel] to appear on behalf of the Estate at the time of the friendly suit." *See id.* at 439, 702 A.2d at 988.

## II.

We shall address first the jurisdictional issues. We turn our attention to whether, in the absence of any service upon her or notice to her of the proceedings, Renee Cole is entitled to have the judgment against her set aside.

Renee Cole argues that the court never acquired jurisdiction over her because she was never served with process, and thus, the judgment as to her was void. As to its position with respect to Renee Cole, WMATA states:

Consistent with the position taken in the lower courts, WMATA takes no position regarding the judgment against Renee Cole. . . . It should be noted, however, that the Court of Special Appeals' decision contains a detailed, well-reasoned discussion which strongly suggests affirmance as to the arguments of Renee Cole, as well as the Estate.

It is undisputed that Renee Cole was never served with process in the friendly suit giving rise to the consent judgment. It is also undisputed that counsel filed an answer purportedly on her behalf in that suit.

Once thirty days have passed since the entry of judgment, a court may exercise revisory power and control over the judgment under the circumstances set forth in section 6–408 of the Courts & Judicial Proceedings Article and Maryland Rule 2–535(b):

§ 6–408. Revisory power of court over judgment.

For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

Maryland Code (1974, 1998 Repl.Vol.) § 6–408 of the Courts and Judicial Proceedings Article.

Rule 2–535. Revisory power.

\* \* \* \* \* \*

(b) *Fraud, mistake, irregularity.* On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

In *Tandra S. v. Tyrone W.,* 336 Md. 303, 314, 648 A.2d 439, 444 (1994), we noted that "[t]he rationale behind strictly limiting a court's revisory power is that in today's highly

litigious society, there must be some point in time when a judgment becomes final."

At issue in this appeal is "mistake." Mistake is limited to a jurisdictional mistake. *See Claibourne v. Willis,* 347 Md. 684, 692, 702 A.2d 293, 297 (1997). This Court has explained that "[t]he typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence the court never obtains personal jurisdiction over a party." *Tandra S. v. Tyrone W.,* 336 Md. 303, 317, 648 A.2d 439, 445 (1994). *See also Miles v. Hamilton,* 269 Md. 708, 713, 309 A.2d 631 (1973) (holding that without proper service, jurisdiction was absent, and the court's judgment was invalid and without significance).

Petitioners urge that Rule 2–535 is applicable because the parties to the friendly suit have consented to the motion to vacate. We note at the outset that the record in the instant case demonstrates that all of the parties have not consented to the motion to vacate judgment. Marie Kamara, acting individually, specifically took no position on the motion. Moreover, consent of the parties is not a factor under Rule 2–535 to be considered in deciding whether to vacate or revise a judgment. Nevertheless, a court properly may consider the consent of the parties under Rule 2–535 when making a decision that is discretionary in nature. *See* J.A. Bock, Annotation, *Consent as Ground of Vacating Judgment, or Granting New Trial, in Civil Case, After Expiration of Term or Time Prescribed by Statute or Rules of Court,* 3 A.L.R.3d 1191 (1965 & Supp.1995). A court may be more inclined to exercise its discretion and revise judgment when all parties consent. Conversely, the court clearly is not bound to vacate a judgment merely because all parties to a suit request that such action be taken.

### A.

As we have indicated, the trial court determined that the appearance of counsel engaged by GEICO was authorized by the defendants. The Court of Special Appeals held that

through the appearance of counsel, the parties had waived any defects in service and had thus consented to jurisdiction. *See Chapman*, 118 Md.App. at 438, 702 A.2d at 987. The court reasoned that

> where, as in this case, a party enters a general appearance, either through counsel or personally, objections to deficiencies in service of process are waived. Furthermore, where a general appearance has been entered by an attorney on behalf of a client, there is a *prima facie* presumption that the appearance is authorized. This presumption may only be overcome by clear and convincing evidence of a lack of authority.

*Id.* at 433–34, 702 A.2d at 985 (citations omitted). The Court of Special Appeals noted that although no service had been made on either defendant before suit was filed, the burden was on the defendant to produce clear and convincing evidence that counsel's appearance in that action was unauthorized. The court held that Renee Cole failed to meet this burden, reasoning that

> where (1) the moving party must overcome a strong presumption, (2) the circumstances give rise to a strong inference that an admittedly existing contract proves the presumption, and (3) the moving party is the only party in possession of the contract, it is fair to charge the moving party with producing that contract to disprove the presumption.

*Id.* at 438, 702 A.2d at 987. Essentially taking judicial notice of the contract, which was not in evidence before the trial court or in the record before the intermediate court, the court concluded that "the circumstances strongly imply that the policy contained the standard clauses obligating GEICO to defend Renee Cole in case of litigation and/or empowering GEICO to settle claims against her within policy limits." *Id.* at 437, 702 A.2d at 986.[5]

---

**5.** There is nothing in the record to establish "standard clauses" in contracts of insurance, or that this particular policy contained such a clause.

 It is a basic principle of law "that before a court may impose upon a defendant a personal liability or obligation in favor of the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant." *Lohman v. Lohman,* 331 Md. 113, 125, 626 A.2d 384, 390 (1993), citing *Altman v. Altman,* 282 Md. 483, 486, 386 A.2d 766, 768 (1978); *Glading v. Furman,* 282 Md. 200, 202, 383 A.2d 398, 400 (1978); *McSherry v. McSherry,* 113 Md. 395, 400, 77 A. 653, 655 (1910). We said in *Lohman:*

> There can be no judgment nor decree *in personam* unless the defendant has been notified of the proceeding by proper summons, for the court has no jurisdiction over him until such service is properly accomplished, or is waived by a voluntary appearance by the defendant, either personally or through a duly authorized attorney. *Harvey v. Slacum,* 181 Md. 206, 210, 29 A.2d 276, 278 (1942); 3 *Poe's Pleading and Practice* § 62, at 59 (6th ed.1975). For this reason we have repeatedly held that defective service of process is a jurisdictional defect, *Mooring v. Kaufman,* 297 Md. 342, 355, 466 A.2d 872, 878 (1983); *Miles v. Hamilton,* 269 Md. 708, 713, 309 A.2d 631, 634 (1973); *Keen v. Keen,* 191 Md. 31, 36, 60 A.2d 200, 203 (1948); *McSherry v. McSherry,* 113 Md. 395, 400, 77 A. 653, 655 (1910)....

331 Md. at 130, 626 A.2d at 392. It is also clear that when an attorney enters an authorized appearance on behalf of a party, this act has the effect of waiving any defects of service upon the defendant. Once a party files an answer without raising the defense of insufficient service of process, that defense ordinarily is waived. *See* Maryland Rule 2–322(a).[6]

---

**6.** Rule 2–535 has no application when the defenses of lack of personal jurisdiction and/or insufficient service of process have been waived. Rule 2–322(a) provides:

The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the person ... and (4) insufficiency of service of process. If not so made and the answer is filed, these defenses are waived.

■ WMATA relies on *Bethlehem Steel Corp. v. Devers,* 389 F.2d 44 (4th Cir.1968) and *Lovering v. Lovering,* 38 Md.App. 360, 380 A.2d 668 (1977), as support for the proposition that there is a presumption that the entry of an attorney in an action for a party is authorized and in order to overcome that presumption there must be clear and convincing evidence of a lack of authority. We need not address whether there is such a presumption, because any presumption has been clearly rebutted in this case.

The evidence demonstrates that the insurance company attorney had never spoken to or met Renee Cole as of December 23, 1993, the date on which the friendly suit was filed. Renee Cole was never personally served, nor did she receive any notice whatsoever of the lawsuit or the attorney's appearance on her behalf. In fact, there was no testimony of any attempt at any time to serve Renee Cole. As stated by the Court of Special Appeals,

> With regard to Renee Cole, she has submitted sworn deposition testimony that she never authorized the appearance, that she never heard of or had any communications with the attorney prior to the day of the suit or for the fourteen months following, and that she was unaware that she was a party to any suit or even that the suit existed. She also plausibly maintains to have been quite ill at the time of the suit. Her testimony is entirely unrebutted, as WMATA has consistently declined to take any position regarding her motion to vacate.

*Chapman,* 118 Md.App. at 436, 702 A.2d at 986. On this unrebutted testimony, we think the circuit court erred in refusing to vacate the judgment against Renee Cole.[7] *See*

---

Once an answer has been duly filed, a party may not subsequently raise these defenses as grounds to vacate a judgment. When an answer has not been duly filed, a court may consider vacating judgment under Rule 2–535. Typical examples of the latter situation include the entry of a default judgment without service of process on the defendant, or, as in the instant case, the filing of an answer by an attorney without a party's authorization.

**7.** In her deposition testimony, Renee Cole stated:

*Fisher v. De Marr,* 226 Md. 509, 174 A.2d 345 (1961); *C.I.T. Corp. v. Powell,* 166 Md. 208, 170 A. 740 (1934).

### B.

We turn next to the question of whether the entry of the appearance of counsel engaged by GEICO as attorney on behalf of the estate was valid or whether relief should be granted against the estate. Respondents' arguments with respect to the estate are slightly different than the argument as to Renee Cole. As noted, the court entered a consent judgment against the estate before the personal representative was appointed. The arguments with respect to the estate thus center around whether Reverend Cole's actions before he was appointed personal representative acted to bind the estate, and whether his actions subsequent to his appointment were sufficient to ratify actions taken before the estate was in existence.

Several provisions of the Estates and Trusts Article relating to personal representatives are relevant. Section 5–101 provides that "the grant of letters . . . may be accomplished after filing of a petition for probate by: (1) Administrative probate by the register of wills . . .; or (2) Judicial probate by the court. . . ." Section 5–102 provides that "[e]xcept for a foreign

---

Q: Did you ever find out from anybody—Other than what you just told me about Damond's mother, did you ever find out from anybody that this lawsuit had been filed—the one where Ms. Kamara is suing you and the estate of Henry Cole?
A: I've never seen this. I've never seen this document. I never knew the content.
Q: Okay. So, you never knew that they were suing you personally?
A: No, I never saw—I never understood it as being personal, and I certainly never knew what the basis of any suit was. I—No, I did not.
Q: Okay. Without getting into the specifics of conversations you had with lawyers, did you have some conversation with a lawyer from Geico regarding people making claims—
A: No.
Q: —against Geico?
A: No.
Q: . You were never contacted in that regard?
A. No.

personal representative, a person may not qualify as or exercise the powers and duties of a personal representative unless he has been appointed administratively or judicially." *Id.* § 5–102(b). Section 6–101 provides that as a condition to appointment, a personal representative must

> file (a) a statement of acceptance of the duties of the office, (b) any required bond, and (c) a written consent to personal jurisdiction in any action brought in the State against him as personal representative or arising out of his duties, where service of process is effected pursuant to the Maryland Rules at his address shown in the proceedings.

*Id.* § 6–101.

The acts of a person prior to appointment as personal representative may act to bind an estate, and the personal representative may ratify actions taken prior to appointment. The Estates and Trusts Article provides as follows:

§ 6–105. Time of accrual of duties and powers; ratification.

(a) *When letters are issued.*—The duties and powers of a personal representative commence upon the issuance of his letters, but when done in good faith, his acts occurring prior to appointment have the same effect as those occurring after.

(b) *Acts of others.*—A personal representative may ratify and accept acts done on behalf of the estate by others if the acts would have been proper for a personal representative.

*Id.* § 6–105.

Respondents argue that § 6–105(b) applies to Reverend Cole. They note that he served as personal representative from October of 1994 until April of 1996, during which time he took no action to vacate the judgment against the estate. Although the circuit court did not explicitly refer to the ratification provision, it observed that "the Motion to Vacate filed on behalf of the Estate was filed 28 months after the judgment was entered and 18 months after the appointment of Henry Cole as Personal Representative of the Estate of Henry Cole, II." Based on these facts, we agree with the

circuit court's implicit conclusion that Reverend Cole ratified the consent judgment during his tenure as personal representative. An attorney, acting on Reverend Cole's behalf, participated in the consent judgment against the estate. The fact that he may not have understood all the implications of the prior judgment is of no consequence. We agree with Respondents that such knowledge is attributed to him. He accepted funds paid on behalf of the estate in that action. After his appointment as personal representative, he did nothing to amend or alter the consent judgment against the estate during his subsequent eighteen-month tenure. The circuit court properly denied the motion to vacate the judgment as to the estate.

## III.

Finally, we shall address the question of whether WMATA had a justiciable interest in the friendly suit such as permitted intervention in the action for the purpose of opposing the motion to vacate the judgment. Maryland Rule 2–214(a) governs intervention of right, and provides as follows:

(a) *Of right.* Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

Petitioners argue before this Court that the possibility of a collateral effect of a suit or judgment does not create a "justiciable interest" entitling a party to intervene in an existing suit. According to Petitioners, allowing intervention to preserve a technical defense "would make litigation more cumbersome, more protracted and would inhibit settlement of claims where, as here, there is no remaining dispute between the parties."

WMATA argues that the requirements of Rule 2–214(a)(2) have been satisfied to support intervention in this action. WMATA maintains that its motion to intervene was timely; that no existing parties in the action were adequately representing WMATA's interests; and that it had a sufficient interest in the subject of the action. As to its interest, WMATA contends:

> If the judgment against the Estate is not vacated, then WMATA's motion for summary judgment will likely be granted. However, if the judgment is vacated, WMATA's motion will likely be denied, since there will be no judgment upon which to base a finding of collateral estoppel.

Finally, as to the adequacy of existing representation, WMATA argues that all other parties to the action either consented to the motion to vacate or took no position, and no existing party was opposing Appellant's motion.

The Court of Special Appeals cogently set out the four requirements that a party moving for intervention as of right must establish:

1. the application for intervention must be timely;

2. the applicant must have an interest in the subject matter of the action;

3. the disposition of the action would at least potentially impair the applicant's ability to protect its interest; and

4. the applicant's interests must be inadequately represented by the existing parties.

*Chapman,* 118 Md.App. at 427, 702 A.2d at 981–82.

The question presented in this case is whether WMATA has a sufficient interest in the subject matter of the motion to vacate the judgment entered in the friendly suit, and whether the disposition of that motion, as a practical matter, would potentially impair or impede WMATA's ability to protect that interest. *See* Maryland Rule 2–214(a)(2); *Montgomery County v. Bradford,* 345 Md. 175, 198, 691 A.2d 1281, 1292 (1997).

We now turn to the nature of WMATA's interest in the motion to vacate the judgment. In considering this issue, the

Court of Special Appeals did not find it necessary to resolve whether the consent judgment would have collateral estoppel effect on the federal lawsuit:

> We first make plain that we are not resolving the question that is currently before the United States District Court as to the preclusive effect of a judgment in a friendly suit brought for the sole purpose of binding a minor to a settlement agreement. While that very issue is, of course, the driving force of the instant dispute, we are limited to reviewing only the lower court's orders, which did nothing more than permit intervention by WMATA and deny the motion to vacate judgment. Any opinion we could render regarding issue preclusion would not be binding upon the District Court and would therefore be entirely advisory in nature. *E.g., Hammond v. Lancaster,* 194 Md. 462, 71 A.2d 474 (1950).

*Chapman,* 118 Md.App. at 426, 702 A.2d at 981. We agree with that threshold observation. It is up to the federal court and not this Court to determine whether the summary judgment motion is valid. As to the issue of WMATA's right to intervene, the Court of Special Appeals held that the trial court was correct in ordering intervention as a matter of right. *Id.* at 432, 702 A.2d at 984. The court stated:

> [W]e can find nothing speculative about the interest asserted by WMATA. As of the time of the motion to intervene ... all the necessary events had occurred to give WMATA a real interest in the motion to vacate judgment. A final judgment had already been entered against the Estate in a negligence suit. The Estate had already sued WMATA for negligence in a related action, and WMATA had already moved for summary judgment based on the existence of the prior judgment. As Maryland is a contributory negligence jurisdiction, the summary judgment motion apparently asserted a complete defense. The Estate had already moved to vacate the prior judgment, and the Federal court had yet to rule on the merits of the summary judgment motion, perhaps waiting to see if the motion to vacate would succeed. It is hard to imagine what further preparatory step

could be taken to make WMATA's interest more palpable. The resolution of the motion to vacate would determine whether WMATA would have the opportunity to present this complete defense to suit. The fact that the Federal court may eventually deny the summary judgment motion does not render the interest speculative or moot the issue. Just as in [*Citizens Coordinating Committee on Friendship Heights, Inc. v. TKU Associates*, 276 Md. 705, 351 A.2d 133 (1976)], WMATA had an interest in preventing the foreclosure of its opportunity to protect its legal interest in another forum.... We find that WMATA's interest, therefore, was entirely sufficient, that it related to the subject of the action, and that the disposition of the action may as a practical matter impede WMATA's ability to protect its interest. Intervention as of right was therefore warranted.

*Id.* at 430–32, 702 A.2d 977 (footnotes omitted).

We agree with the Court of Special Appeals that WMATA was entitled to intervene as a matter of right. WMATA's collateral estoppel argument is not frivolous, and its position that the question of decedent's negligence was necessarily implicit in the consent judgment is at least arguable. If the motion to vacate were granted, WMATA's opportunity to argue its position in the federal court would be foreclosed.

WMATA's interest in the motion to vacate judgment is neither speculative nor contingent on the happening of other events. The resolution of the motion to vacate has a direct effect on WMATA's position in the subsequent federal lawsuit. WMATA thus "claims an interest relating to the property or transaction that is the subject of the action," and "is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest." Maryland Rule 2–214(a)(2). Further, because no existing party opposes the motion to vacate judgment, WMATA's position is not presently "adequately represented by existing parties." *Id. See also Maryland Radiological Society v. Health Services Cost Review Comm.*, 285 Md. 383, 390, 402 A.2d 907, 911–12 (1979).

We do not hold that a party may intervene in a lawsuit any time it wishes to preserve a possible defense in another lawsuit. We simply hold that under the circumstances of this case, where a prior judgment existed which arguably had collateral estoppel effect on a subsequent pending lawsuit, where the preclusive effect of that judgment may directly resolve a summary judgment motion in the second suit, where parties moved to vacate that original judgment, and where no existing party actively opposed the motion to vacate, WMATA was entitled to intervene.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT AS TO RENEE COLE. COSTS TO BE PAID BY THE ESTATE OF HENRY NORMAN COLE, II.*

RODOWSKY and WILNER, JJ., dissent.

RODOWSKY, Judge, dissenting.

I respectfully dissent from Part II.A of the Court's opinion, holding that the judgment on the claims against Renee Cole in one of the friendly suits should be vacated for lack of jurisdiction over her person. In my view Renee Cole's motion to vacate does not present a case or controversy. Further, because the Court affirms the denial of the motion to vacate made by the co-defendant, the Estate of Henry Norman Cole, II, the motion to vacate by Renee Cole is moot. Accordingly, all of the judgments deciding the Renee Cole motion should be vacated, and the matter remanded to the Circuit Court for Prince George's County with instructions to dismiss Renee Cole's motion. In any event, even if Renee Cole's motion were justiciable, Renee Cole has failed to demonstrate by clear and convincing evidence that her attorney, engaged for her by her personal automobile liability insurer, GEICO, was not authorized to settle the claims against her within policy limits by the friendly suit procedure.

## I

Henry Norman Cole, II was driving a van, owned by Renee Cole and insured by GEICO, that collided with a telephone pole. Henry Norman Cole, II was killed in the accident and passengers were injured, including two minors, Russell Cole and Arouna Koroma. On December 23, 1993, a friendly suit was filed in the Circuit Court for Prince George's County in order to bind the minor children to a settlement effected by GEICO. The cases of both minor plaintiffs claimed against the driver's estate. Renee Cole was a defendant only in the Koroma friendly suit, but not in Russell Cole's friendly suit against the Estate of Cole, even though all of the claims were joined in one action. Renee Cole's liability, if any, in the Koroma case could be only vicarious.[1] Also on December 23, 1993, general denial answers were filed and an order for judgment by consent was signed. The precise identity of the parties and the judgments, set forth in the judgments docketed January 3, 1994, are as follows:

"[1] Judgment ... in favor of the plaintiff, Marie Kamara, as mother and next friend of Arouna Koroma, against the defendants, Estate of Henry Norman Cole, II and Renee J. Cole in the amount of $29,296.80[;] ... [2] Judgment ... in favor of the plaintiff Marie Kamara, individually, against the defendants Estate of Henry Norman Cole, II and Renee J. Cole in the amount of $15,053.20[;] ... [3] Judgment ... in favor of the plaintiff, Henry [Reverend] Cole, as father and next friend of Russell Cole against the defendant Estate of Henry Norman Cole, II in the amount of $5,508.27[; and] ... [4] Judgment ... in favor of the plaintiff Henry [Reverend] Cole, individually against the defendant Estate of Henry Norman Cole, II in the amount of $8,741.73."

When Renee Cole and the Cole Estate moved to vacate the judgments against them, they filed in support of those motions affidavits by Russell Cole and Arouna Koroma who at that

---

1. Renee Cole is the stepmother of Henry Norman Cole, II (the driver) and, I infer, of Russell Cole who was represented in his friendly suit by his father, Reverend Cole.

time had reached their majority. Each of them stated that he had no objection to opening the judgments against Renee Cole and the Cole Estate, and each affiant stated that, contemporaneously with the making of the affidavit, he had executed a release naming Renee Cole, the Cole Estate, and GEICO as releasees.

Maryland Rule 2–535(b) provides that a party may reopen an enrolled judgment only on the grounds of "fraud, mistake, or irregularity." "Mistake" refers to a jurisdictional defect, including improper service of process. *Pickett v. Noba, Inc.,* 114 Md.App. 552, 558, 691 A.2d 268, 271 (1997). A defendant seeking to reopen an enrolled judgment must show, in addition to fraud, mistake, or irregularity that the party has "acted with ordinary diligence, in good faith, and has a meritorious defense or cause of action." *Tandra S. v. Tyrone W.,* 336 Md. 303, 314, 648 A.2d 439, 444 (1994) (citing *J.T. Masonry Co. v. Oxford Constr. Servs., Inc.,* 314 Md. 498, 551 A.2d 869 (1989)); *see Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291, 293 (1975) (reversing the trial court's decision to vacate a judgment because the movant had failed to make this showing). Defendants who move to open judgments against them are required to show a meritorious defense because, in the ordinary scenario where there is a genuine case or controversy, reopening is sought for the purpose of litigating the underlying merits of the case. Renee Cole and the Cole Estate cannot possibly seek to litigate the merits of the claims of the former minors against them because those claimants, as adults, have released the judgment debtors. Instead, their motions seek to reopen the judgments in order to avoid an asserted preclusive effect in a separate suit. Compounding the lack of adverseness, at least as to Renee Cole, is that she is not an interested person in the Cole Estate. See Maryland Code (1974, 1991 Repl.Vol.), § 7–104(a) of the Estates and Trust Article (requiring the personal representative to "advise the register of the names and addresses of the heirs of the decedent and of the legatees"); Maryland Rule 6–316.

*Reyes v. Prince George's County,* 281 Md. 279, 380 A.2d 12 (1977), is this Court's leading case on justiciability. It was

brought to test the validity of Prince George's County revenue bonds to be issued to finance an arena. The arena paid counsel for the plaintiffs who were selected to challenge the legality of the issuance. *Id.* at 282–83, 380 A.2d at 14.

In light of the payment of counsel fees by the opposing party, this Court characterized the suit as "collusive," and lacking in "true, as opposed to technical, adverseness between the parties." *Id.* at 289, 380 A.2d at 18. The Court did not think itself bound to dismiss the case, however, because the policy of not rendering advisory opinions is a rule of decision rather than a constitutional mandate. Instead, we set forth procedures for rendering advisory declaratory judgments in those "rare instances which demonstrate the most compelling of circumstances." *Id.* at 297, 380 A.2d at 22. This Court noted, however, that cases involving extraordinary circumstances must nevertheless present a justiciable issue in order for the Court to decide the case:

> "A prerequisite to the adjudication of any action under the procedures we detail below [for rendering an advisory opinion in the circumstances noted] is its cognizability under the Maryland Uniform Declaratory Judgments Act, and in this context . . . a court has no right to make a determination in declaratory judgment cases in which no justiciable issue is presented."

*Id.* at 287–88, 380 A.2d at 17 (citation omitted) (citing *Harford County v. Schultz*, 280 Md. 77, 86, 371 A.2d 428, 432–33 (1977)); *see also Bishop v. Governor*, 281 Md. 521, 525, 380 A.2d 220, 223 (1977) (characterizing the *Reyes* exception as a "*justiciable* declaratory judgment action, even though moot," and noting that "an actual controversy did exist" in *Reyes* (emphasis added)).

In the instant matter the motions to vacate the judgments do not present a justiciable issue. Addressing that concept, the Court stated in *Reyes:*

> " 'If the real and primary object of the suit is to redress the grievance of the plaintiff and there is an actual contro-

versy, involving real and substantial rights between the parties to the record, the suit [will] not be dismissed.

"It is only when the sole object of the suit is to affect third parties and when the interest of the parties to the suit is not adverse and when there is no real and substantial controversy between those who appear as adverse parties, that the principles [regarding collusive and fictitious suits] apply.' "

*Reyes*, 281 Md. at 284, 380 A.2d at 15 (alterations in original) (quoting *Fitzjarrell v. Boyd*, 123 Md. 497, 503, 91 A. 547, 548 (1914)). This passage suggests two requirements of justiciability: (1) that the plaintiff seek to redress her own harm rather than to affect a third party; and (2) that there be a "real and substantial controversy," or true adverseness, between the parties.

Even if we assume that the Cole Estate meets the first of these requirements, because it is the plaintiff in the suit against WMATA, it does not meet the second as to the plaintiffs in the friendly suit. In any event, whether the Cole Estate meets these requirements is immaterial in light of the Court's holding, with which I agree, that Reverend Cole ratified the friendly suit as to the Cole Estate.

Renee Cole's motion to vacate the judgments against her fails to meet either of these requirements of justiciability. First, the sole object of her motion is to affect a third party, namely, the Cole Estate, by eliminating the asserted preclusive effect of these judgments in the estate's federal suit against WMATA. Renee Cole is not an heir of the estate, and has no legally recognized interest in the federal suit. Second, there is no "real and substantial controversy" between Renee Cole and the plaintiff in the case that she seeks to reopen, *i.e.*, Marie Kamara, whether individually, or as mother and next friend of Arouna Koroma. Renee Cole has not alleged a meritorious defense in that case, and does not intend to litigate its merits. Renee Cole cannot "backfill" to meet the requirement for an actual controversy by relying on WMATA's intervention in the friendly suit. Her motion to vacate

the judgments must present a case that is actually adverse between herself and the original parties because such adverseness is " 'essential to the integrity of the judicial process.' " *Reyes,* 281 Md. at 286, 380 A.2d at 16 (quoting *United States v. Johnson,* 319 U.S. 302, 305, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413, 1415 (1943) (per curiam)). Failing to do so, Renee Cole's motion is non-justiciable, and the asserted defect of service of process does not permit this Court to reopen the judgments against her.

## II

As *Reyes* noted, the adverseness aspect of justiciability shades into the concept of mootness. *See id.* at 289, 380 A.2d at 18 (noting that the lack of true adverseness between the parties may require dismissal of the case under the principal that " 'courts will not decide moot or abstract questions, or, in the absence of constitutional mandate, render advisory opinions' " (quoting *Harford County,* 280 Md. at 80, 371 A.2d at 429)). Renee Cole's motion to vacate the judgments against her in the Koroma friendly suit is moot because, even if her motion to vacate presents an actual controversy, and even if the judgments against her in the Koroma friendly suit were vacated, the Court upholds all of the judgments in the friendly suits against the Cole Estate. Specifically, today's decision leaves standing the judgments against the Cole Estate in favor of Marie Kamara, individually and as mother and next friend of Arouna Koroma, and in favor of Reverend Cole, individually and as father and next friend of Russell Cole.[2]

This Court, like the Court of Special Appeals, need not decide "the preclusive effect of a judgment in a friendly suit brought for the sole purpose of binding a minor to a settlement agreement." *Chapman v. Kamara,* 118 Md.App. 418, 426, 702 A.2d 977, 981 (1997). Decision of that issue is for the

---

**2.** Renee Cole could not have standing to challenge the judgments against the Cole Estate in favor of Russell Cole because the latter did not claim against her and no judgment has been entered against her on Russell Cole's claims.

federal court in the action against WMATA. The point is simply that, even if the judgments in the Koroma suit against Renee Cole were vacated, the remaining judgments against the Cole Estate would exert the same preclusive effect (if any) as the vacated judgments with respect to the negligence of the driver of the van, Henry Norman Cole, II. That effect would remain unchanged even if the vicarious liability of Renee Cole were not alleged in the Koroma friendly suit. The possible benefit to a third party, the Cole Estate as plaintiff in the federal action, in avoiding the possible preclusive effect of a judgment against it, if otherwise sufficient to make Renee Cole's motion justiciable, is mooted by affirming the continued validity of the judgments against the Cole Estate.

"The test for mootness is whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State,* 324 Md. 641, 646, 598 A.2d 194, 197 (1991). In *Adkins* the Court held that an appeal challenging the process by which the appellant had been tried for a parole violation, after the appellant had completed his sentence during the appeal's pendency, was not moot because the finding of a parole violation had collateral consequences *as to the challenger* similar to those of a criminal conviction. *Id.* at 656, 598 A.2d at 202. In addition to noting that the asserted harm would continue, the Court stated that a "successful due process challenge by the petitioner would remove from his record any blemish of a violation of probation finding." *Id.* at 651, 598 A.2d at 199. This removal is, of course, the "effective remedy" that rendered the harm redressable and the controversy live.

Here, the movants request that, after the judgments are vacated, the circuit court should dismiss the friendly suits, as if they never had been filed. By a parity of reasoning, a divorced couple, who reconcile, could, by their agreement, require the judgment rendering court to vacate the decree of divorce, not for the purpose of litigating the merits of the divorce, but so that the parties could revert to their prejudg-

ment status as married, without the need of any second marriage ceremony.

> This Court, in rejecting a mootness argument, has said that "'the doctrine of mootness applies to a situation in which past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect.' In short, where it appears that our decision could have no effect on what has occurred, or the questions before us have become academic or reduced to abstract propositions, we will generally regard the case as moot."

*Bethesda Management Servs., Inc. v. Department of Licensing & Regulation,* 276 Md. 619, 625–26, 350 A.2d 390, 393–94 (1976) (quoting *Hayman v. St. Martin's,* 227 Md. 338, 343, 176 A.2d 772, 775 (1962) (citations omitted)).

Here, the circuit court cannot fashion an "effective remedy" for Renee Cole. The "harm" that she seeks to redress is not the lack of jurisdiction over her person in the friendly suit, but the asserted preclusive effect that the judgments against her might have in the federal suit. As already noted, however, even if her motion were granted, the remaining judgments would exert the same preclusive effect, if any. Vacating the judgments against her will be "without effect" with regard to the harm that Renee Cole's motion actually seeks to redress. The motion is moot and the merits of the motion should not be decided by this Court. *See Harford County,* 280 Md. at 80, 371 A.2d at 429 (noting that the Court "will not decide moot or abstract questions, or, in the absence of constitutional mandate, render advisory opinions") (internal quotation marks omitted) (quoting *Hammond v. Lancaster,* 194 Md. 462, 471–72, 71 A.2d 474, 478 (1950)).

### III

A final reason why the judgment of the Circuit Court for Prince George's County should be affirmed is that Renee Cole failed to prove that counsel for GEICO was not authorized to settle the claims of the two minor plaintiffs against her within

policy limits and to utilize the friendly suit procedure to effect that settlement. I agree with the thorough and well reasoned opinion by the Court of Special Appeals. *Chapman v. Kamara*, 118 Md.App. 418, 702 A.2d 977 (1997).

The motion to vacate was heard on its merits by the circuit court on a record consisting of the pleadings and other papers, including affidavits and deposition extracts, and on the general facts agreed upon by counsel and represented to the court. Those general background facts are that Renee Cole's GEICO policy carried liability limits per occurrence of $100,000. There were seven passengers in the van, including the two minor claimants. The adjuster for GEICO threw in the policy, if that would settle all of the claims, and proposed apportioning the $100,000 among the seven claimants based on the ratio that a particular claimant's special damages bore to the total special damages. That was acceptable to all of the claimants, including the two minors, who were each represented by their own counsel. GEICO then apparently sent the matter to counsel for the purpose of having the two minors bound by their respective settlements.

On this aspect of the case the majority holds, necessarily as a matter of law and contrary to the fact-finding by the circuit court, that there was no personal jurisdiction over Renee Cole because she did not know of the friendly suit and was not served with the suit papers.

In my opinion that conclusion cannot withstand analysis. The burden was on Renee Cole, as the movant, to prove that there was no personal jurisdiction over her. *See Home Indem. Co. v. Killian*, 94 Md.App. 205, 216, 616 A.2d 906, 911 (1992) (noting that, when a party seeks to revise a judgment, "[*i* ]t must show that the judgments were entered by fraud, mistake, or irregularity" (emphasis added)). Because she sought to vacate an enrolled judgment, the burden of persuasion on that issue was to the standard of clear and convincing evidence. *See Tandra S.*, 336 Md. at 314, 648 A.2d at 444 ("[I]t is well established that there must be clear and convincing evidence of the ... mistake ... before a movant is entitled

to have a judgment vacated under Rule 2–535(b)."). Renee Cole did not show that GEICO, acting through counsel, was not authorized to settle the claims against her within policy limits by appearing for her in the friendly suit, denying liability, and then consenting to the settlement judgment which was promptly paid.

This conclusion is not defeated by the absence from the record of the form of policy issued by GEICO to Renee Cole.

Professor Keeton has said:

"By the terms of the typical liability insurance policy it is provided that the company shall 'defend any suit against the insured ... even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and *settlement* of any claim or suit as it deems expedient....'"

R.E. Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv. L.Rev. 1136, 1137 (1954) (emphasis added; footnote omitted). *See also* R.E. Keeton & A.I. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices* § 7.8(a), at 875 (Practitioner's ed. 1988) ("Liability insurance policies customarily provide that the insurer 'may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient.'" (citing policy forms) (footnote omitted)); E.S. Pryor, *The Tort Liability Regime and the Duty to Defend,* 58 Md. L.Rev. 1, 21 (1999) (noting that "standard commercial and individual liability policies contain language along the following lines: ... 'We will settle or defend, as we consider appropriate, any claim or suit asking for [bodily injury or property] damages'" (quoting Alliance of American Insurers, Policy Kit for Insurance Professionals 3 (1993–94))).

*Sweeten v. National Mutual Insurance Co. of D.C.,* 233 Md. 52, 194 A.2d 817 (1963), dealt with another aspect of the insurer's authority to settle, namely, the failure to settle. There this Court said:

"The prevailing view appears to be that recovery should be rested on the theory of bad faith, because the insurer has

.the *exclusive control,* under the standard policy, of investigation, *settlement* and defense of *any* claim or suit against the insured, and there is a potential, if not actual, conflict of interest giving rise to a fiduciary duty."

*Id.* at 55, 194 A.2d at 818 (emphasis added).

This language from *Sweeten* has been quoted regularly by this Court, as recently as March of this year. *See Mesmer v. M.A.I.F.,* 353 Md. 241, 259–63, 725 A.2d 1053, 1061–64 (1999); *Allstate Ins. Co. v. Campbell,* 334 Md. 381, 395, 639 A.2d 652, 658–59 (1994); *Fireman's Fund Ins. Co. v. Continental Ins. Co.,* 308 Md. 315, 318, 519 A.2d 202, 204 (1987); *State Farm Mut. Auto. Ins. Co. v. White,* 248 Md. 324, 329, 236 A.2d 269, 271–72 (1967).

The recognition by this Court of what standard policies provide was not based on any evidence of an industry survey. Rather, it represents what is in effect judicial notice of that which is common knowledge at the bench and bar. If Renee Cole's policy required her consent for the insurer to settle within policy limits, then, in addition to her general burden as movant, Renee Cole should have come forward with the policy provision that was out of the ordinary. Further undermining the majority's conclusion is the legal presumption that attorneys who enter an appearance on behalf of a party in litigation are authorized to do so. *See Bethlehem Steel Corp. v. Devers,* 389 F.2d 44, 45 (4th Cir.1968); *Lovering v. Lovering,* 38 Md.App. 360, 362, 380 A.2d 668, 670 (1977).

Finally, the undisputed facts on which the majority relies, namely, that Renee Cole was not served with and had no knowledge of the suit, do not establish that the entry of the judgment was unauthorized. That evidence, being entirely consistent with a friendly suit which is authorized under the typical or standard policy, proves nothing.

Judge WILNER has authorized me to state that he joins in the views expressed herein.